BASHIR A. CHOWDHRY, M.D., Appellant, *v.* NLVH, INC., a Nevada corporation, dba COMMUNITY HOSPITAL OF NORTH LAS VEGAS, SALLY LAPICA, Special Administratrix of the Estate of ANDREW LAPICA, M.D., Deceased, MARIAN DREIHAUPT, Special Administratrix of the Estate of LAWRENCE WILCHINS, M.D., Deceased, FRANK SILVER, M.D., CHARLES W. MOORE, AND AMERICAN HEALTH CARE MANAGEMENT HOME CARE, INC., a Texas corporation, Respondents.

No. 21344

May 7, 1993                                         851 P.2d 459

[Rehearing denied November 2, 1993]

*Gentile, Porter & Kelesis,* Las Vegas, for Appellant.

*Barker, Gillock, Koning & Brown* and *Bruce S. Kickinson,* Las Vegas, for Respondent Sally Lapica.

---

[6]The Honorable Miriam Shearing, Justice, did not participate in the decision of this appeal.

*Alverson, Taylor, Mortensen & Nelson* and *Daniel E. Curriden,* Las Vegas, for Respondents NLVH, Inc., Marian Dreihaupt, Frank Silver, Charles W. Moore and American Health Care Management Home Care, Inc.

## OPINION

*Per Curiam:*

### FACTS

The incident which precipitated this litigation occurred in the early morning hours of October 2, 1985. Shortly after midnight, a young woman entered the emergency room of the respondent hospital North Las Vegas Hospital ("NLVH"), complaining of chest pain and shortness of breath. She was seen by respondent Andrew Lapica, the emergency physician on duty. Lapica diagnosed the patient as suffering from a possible pneumohemothorax[1] which required the placement of a chest tube to drain accumulated fluids. Lapica contacted appellant Dr. Bashir A. Chowdhry, a physician who had performed recent surgery on the young woman and who was also the on-call thoracic surgeon at NLVH. Lapica told Chowdhry that his services were required at NLVH. However, the details of the ensuing conversation are disputed.

The record reveals that Chowdhry refused to return to NLVH to treat the patient because he had recently left there, and would only treat her if she were transferred to University Medical Center ("UMC") (then known as Southern Nevada Memorial Hospital) or Humana Sunrise Hospital ("Sunrise"). Chowdhry testified that he could not tend to the patient at NLVH because of a conflicting emergency at UMC; however, Chowdhry admittedly failed to inform anyone at NLVH of this conflict.

Having received no assurances from Chowdhry that he would return to NLVH, Lapica contacted NLVH's Chief of Staff, respondent Lawrence Wilchins.[2] Lapica related the events to Wilchins, stating in particular that Chowdhry refused to come to NLVH and attend to his patient. Lapica then sought Wilchins' advice on how to proceed. Both physicians concluded that if the patient could be safely transported to Sunrise, the transfer should be effected so she could be treated by Chowdhry.

Lapica contacted the emergency room doctor at Sunrise, explained the nature and basis of the problem, and received permission to transfer the patient. The patient was ultimately transported to Sunrise, where she was treated by Chowdhry.

Lapica and Barbara Crow, the supervising nurse at NLVH, prepared incident reports detailing the morning's events and

---

[1]Pneumohemothorax refers to a condition of air and blood in the chest cavity.

[2]Upon the death of Wilchins, Marian Dreihaupt, Special Administratrix of the Wilchins' estate, was substituted for the decedent as respondent.

submitted them to the hospital administrator, respondent Charles Moore. On the following day, October 3, 1985, Moore informed respondent Frank Silver, then Chief of Surgery, that Chowdhry had refused to come to the NLVH emergency room to treat his patient, and insisted on her transfer to Sunrise. Thereafter, the matter was directed to the NLVH Surgery Committee, which recommended summary suspension of Chowdhry's hospital privileges. A letter to that effect was sent to Chowdhry on October 3, 1985, and Chowdhry received notification of the complaint and suspension on October 4, 1985.

In response to Chowdhry's request, a hearing was held before the Medical Executive Committee on November 1, 1985. As a result of the hearing, Chowdhry's staff privileges were reinstated, but a reprimand was placed in his file for jeopardizing himself, the patient and the hospital. NLVH denied Chowdhry's subsequent request to have the reprimand expunged from his record, thus prompting Chowdhry to file the instant action.

Chowdhry's complaint alleged, *inter alia,* theories of liability based upon negligence, breach of contract, conspiracy, defamation and negligent and intentional infliction of emotional distress. His claims were premised upon an implied charge of patient abandonment and the manner in which NLVH conducted the disciplinary proceedings. Chowdhry sought compensatory and punitive damages and expungement of the suspension and reprimand from his file.

Prior to the commencement of trial, the district court excluded certain evidence pertaining to Lapica. At the close of Chowdhry's case in chief, the district court dismissed the claim for punitive damages. After the close of the evidence, directed verdicts were granted eliminating Chowdhry's claims for defamation and infliction of emotional distress. On Chowdhry's remaining claims for negligence, breach of contract and conspiracy, the jury found that NLVH, Moore and Silver were collectively 30 percent negligent, that NLVH violated its bylaws, that there was no conspiracy, and that Chowdhry had not abandoned his patient. Concluding that Chowdhry had no reasonable basis for bringing the action, the district court awarded $209,376 in attorney's fees and $69,835 in costs to NLVH, Silver, Moore and Wilchins. Lapica was awarded $47,566 in attorney's fees and $9,428 in costs. This appeal followed.

## DISCUSSION

On appeal, Chowdhry raises the following contentions: (1) that the district court erred in dismissing his defamation, punitive damage and infliction of emotional distress claims; (2) that the district court erred in excluding evidence concerning Lapica's

employment history; and (3) that the district court erroneously awarded respondents attorney's fees.

### A. *Involuntary Dismissal of Chowdhry's Claims*

Chowdhry's punitive damage claim was dismissed pursuant to NRCP 41(b). Directed verdicts were entered pursuant to NRCP 50(a) against Chowdhry's defamation and infliction of emotional distress claims.

A motion for involuntary dismissal of an action may be made after the close of plaintiff's case "on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury." NRCP 41(b). In ruling on a 41(b) motion, a court must accept the plaintiff's evidence as true, draw all permissible inferences in the plaintiff's favor, and not assess the credibility of the witnesses or the weight of the evidence. Nevada Indus. Dev., Inc. v. Benedetti, 103 Nev. 360, 362, 741 P.2d 802, 804 (1987) (citations omitted). To defeat a 41(b) motion, the plaintiff must present a prima facie case upon which relief may be granted. *Id.* at 362-63, 741 P.2d at 804.

NRCP 50(a) provides that a motion for directed verdict shall be denied "[i]f the evidence is sufficient to sustain a verdict for the opponent." Stated differently, "[a] directed verdict is proper only in those instances where the evidence is so overwhelming for one party that any other verdict would be contrary to the law." Bliss v. DePrang, 81 Nev. 599, 602, 407 P.2d 726, 727-28 (1965). On a motion for a directed verdict, the district court must view the evidence and all inferences therefrom in a light most favorable to the non-moving party. Broussard v. Hill, 100 Nev. 325, 327, 682 P.2d 1376, 1377 (1984). The same standard applies on appellate review. *Bliss,* 81 Nev. at 601, 407 P.2d at 727.

Mindful of these principles, we now address the propriety of the district court's rulings.

### 1. *Infliction of Emotional Distress*

We have not previously had occasion to decide whether a plaintiff may recover for negligent infliction of emotional distress for negligent acts committed directly against the plaintiff. In State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985), we first recognized a cause of action for negligent infliction of emotional distress where a bystander suffers "serious emotional distress which results in physical symptoms caused by apprehending the death or serious injury of a loved one due to the negligence of the defendant." 101 Nev. at 718, 710 P.2d at 1379. The "physical impact" requirement has also been applied where, as here, the negligent act is alleged to have been committed directly against the plaintiff. *See, e.g.,* Rowland v. Union Hills Country Club,

757 P.2d 105 (Ariz.Ct.App. 1988); Evans v. Twin Falls County, 796 P.2d 87 (Idaho 1990), *cert. denied* 111 S.Ct. 960 (1991); and Allen v. Otis Elevator Co., 563 N.E.2d 826 (Ill.Ct.App. 1990), *appeal denied,* 580 N.E.2d 107 (Ill. 1991). In the context of intentional infliction of emotional distress, we have stated that "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress." Nelson v. City of Las Vegas, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983).

In the present case, Chowdhry's emotional distress claims are premised upon respondents' accusations of patient abandonment. Chowdhry testified that as a result, "he was very upset" and could not sleep. Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement. *See* Hopkins v. State, 702 P.2d 311, 320-21 (Kan. 1985). No other evidence was presented of serious emotional distress or physical injury or illness. Moreover, the evidence failed to demonstrate the existence of extreme or outrageous conduct or intent to cause severe emotional distress. *See Nelson,* 99 Nev. at 555, 665 P.2d at 1145. In short, Chowdhry failed, as a matter of law, to present sufficient evidence to sustain verdicts for negligent or intentional infliction of emotional distress. Therefore, the district court properly granted directed verdicts on these claims.

## 2. *Defamation*

Chowdhry contends that respondents made several statements charging him with patient abandonment and insists that these statements are defamatory *per se* because patient abandonment is "perhaps the most serious complaint that could be leveled against a physician." Chowdhry also argues that the statements "had the potential to critically damage his medical practice."

In granting the directed verdict on the defamation claim, the district court ruled that respondents had not published the statements as contemplated under the law of defamation because they were communicating as one corporate agent to the other. The district court also ruled that the communications were not false.

In order to establish a *prima facie* case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. Restatement (Second) of Torts, § 558 (1977). If the defamation tends to injure the plaintiff in his or her business or profession, it is deemed defamation *per*

*se,* and damages will be presumed. *See,* Nevada Ind. Broadcasting v. Allen, 99 Nev. 404, 409, 664 P.2d 337, 341 (1983).

Whether a statement is capable of a defamatory construction is a question of law. Branda v. Sanford, 97 Nev. 643, 646, 637 P.2d 1223, 1225 (1981). A jury question arises when the statement is susceptible of different meanings, one of which is defamatory. *Id.*

The actual statements made by the various respondents were not that Chowdhry "abandoned" his patient but that he "failed to respond" or "would not come" to NLVH to treat his patient. Although these statements cannot by themselves be deemed defamatory, we recognize that "words do not exist in isolation." *Branda,* 97 Nev. at 646-47, 637 P.2d at 1226. The words must be reviewed in their entirety and in context to determine whether they are susceptible of defamatory meaning. *Id.*

The record reflects that the statements were made by the respondents to hospital personnel and other interested parties (e.g., the patient's mother), in the context of reporting what was reasonably perceived to be Dr. Chowdhry's refusal to treat the patient at NLVH. We conclude that the statements attributable to the respondents, taken in context, are not reasonably capable of a defamatory construction. Because our conclusion is dispositive of this issue, we need not address whether the statements were published or privileged.

### 3. *Punitive Damages*

Punitive damages are recoverable only upon a showing of malice, fraud or oppression, by clear and convincing evidence. NRS 42.005. The district court determined, based upon the evidence presented in Chowdhry's case in chief, that the respondents acted in the interest of their patients and not out of malice towards Chowdhry. We agree. Chowdhry failed to establish a prima facie case for punitive damages. Therefore, the district court correctly dismissed this claim under NRCP 41(b).

### B. *Exclusion of Evidence Concerning Respondent Lapica*

Chowdhry next contends that the district court improperly excluded evidence concerning Lapica's employment history. The district court excluded the evidence upon a determination that similarities between the past and present incidents had not been established and because it sought to avoid a "parade of wit-

nesses'' on this collateral issue. The district court ruled that the evidence would be excluded because of its marginal relevance and because its prejudicial effect outweighed its probative value.

NRS 48.035 provides that even relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. Questions of probative value are left to the sound discretion of the district court and will not be disturbed on appeal absent a showing of abuse. McCourt v. J.C. Penney Co., 103 Nev. 101, 103, 734 P.2d 696, 698 (1987). Moreover, where evidence is marginally relevant and ''could inject collateral issues which would divert the jury from the real issues in the case,'' exclusion is proper. Nevada Nat'l Bank v. Huff, 94 Nev. 506, 516, 582 P.2d 364, 371 (1978).

We discern no error in the district court's ruling on this issue. The district court acted well within its discretion in excluding the evidence.

## C. *Attorney's Fees*

Lastly, Chowdhry contends that the district court erred in awarding the NLVH respondents attorney's fees because they were not prevailing parties. Chowdhry also maintains that the district court erred in granting Lapica attorney's fees for work generated on issues assertedly resolved in favor of Chowdhry. However, Chowdhry does not claim an entitlement to attorney's fees; rather, he stresses that none of the respondents were prevailing parties and were therefore not entitled to statutory fees and costs.

Attorney's fees were awarded pursuant to NRS 18.010(2)(b), which provides that the court may award attorney's fees to a *prevailing party* when it finds that the claim or defense was brought without reasonable ground or to harass the *prevailing party* (emphasis added). An award of attorney's fees lies within the trial court's discretion and will not be overturned absent a ''manifest abuse of discretion.'' County of Clark v. Blanchard Constr. Co., 98 Nev. 488, 492, 653 P.2d 1217, 1220 (1982).

Whether the lower court abused its discretion in awarding attorney's fees depends upon: (1) whether recipients of the fees can be said to have ''prevailed'' in the action; and (2) whether the district judge properly found that Chowdhry's claims were unreasonable and made solely to harass.

### 1. *Prevailing Party*

In Hornwood v. Smith's Food King, 105 Nev. 188, 772 P.2d 1284 (1989), we defined ''prevailing party'' thusly: '''A plaintiff

may be considered the prevailing party for attorney's fee purposes if it succeeds on any significant issue in litigation which achieves some of the benefit is [sic] sought in bringing the suit.'" *Id.* at 192, 772 P.2d at 1287 (quoting Women's Federal Sav. & Loan Ass'n v. Nevada Nat'l Bank, 623 F.Supp. 469, 470 (D.Nev. 1985)).

In *Hornwood,* the lessors brought an action against their anchor tenant, Smith's Food King, seeking compensatory and consequential damages for breach of lease and bad faith. At trial it was determined that Smith breached the lease but with no resultant damage to the Hornwoods. Consequently, the court concluded that Smith's, as the prevailing party, was entitled to attorney's fees. *Id.* at 189-190, 772 P.2d at 1286-87.

On appeal, we reversed both the finding against the Hornwoods concerning consequential damages and the award of attorney's fees to Smith's as the prevailing party. Applying the above quoted definition of "prevailing party," we held that since the Hornwoods had achieved a benefit in bringing the suit, i.e., an entitlement to consequential damages, they were also entitled to attorney's fees as the prevailing party. *Id.* at 192, 772 P.2d at 1287.

The instant record discloses that Chowdhry did not prevail on any of his claims. On the three claims decided by the jury, the negligence claim failed because Chowdhry was found 70 percent negligent; the breach of contract claim failed because Chowdhry was found not to have suffered any damages; and no conspiracy was found.

Chowdhry nevertheless claims that he achieved some benefit from the suit in that the jury found that he had not abandoned his patient. However, as pointed out by NLVH and Lapica, this was not a claim asserted by Chowdhry. Instead, patient abandonment was an affirmative defense which the jury rejected.

### 2. *Reasonable Grounds for Action*

Since attorney's fees were granted pursuant to NRS 18.010(2)(b), there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party. *See* Woods v. Label Investment Corp., 107 Nev. 419, 812 P.2d 1293 (1991).

In awarding attorney's fees and costs, the district judge stated that he was "absolutely convinced that [Chowdhry] abandoned his patient." The district judge stated that:

> Dr. Chowdhry's lawsuit was made in a vindictive and unjustified effort and it was nothing more than his chance to grill

his enemies and it became that, a little feud within this circle. [¶] The suit was brought without reasonable grounds in the motion [sic] to harass under the statute. I'm going to award the fees requested.

Our review of the record reveals no support for the conclusion reached by the district judge concerning unreasonableness and motivation to harass.

First, the jury expressly found that Chowdhry did not abandon his patient. Second, the jury found that Moore and Silver were negligent, albeit to a much lesser extent than Chowdhry (15 percent each vis-a-vis 70 percent). Thus, Chowdhry did not prevail on his negligence claim. *See* NRS 41.141. Third, the jury found that NLVH had breached its bylaws. Chowdhry did not prevail on this claim because the jury found no past damages. Lastly, although Chowdhry did not succeed in getting the reprimand and suspension expunged from his record, the district court did order that a copy of the verdict showing he had not abandoned his patient be placed in his file. Chowdhry maintains that the issue of abandonment was the most important to him and that the inclusion of the verdict in his file essentially nullified the reprimand.

For the reasons enumerated above, we conclude that Chowdhry had reasonable grounds upon which to bring this action. Thus, as to NLVH, Silver, Moore and Wilchins, the award of attorney's fees pursuant to NRS 18.010(2)(b) was erroneous and must be reversed.

With respect to Lapica, Chowdhry contends that the district court abused its discretion in awarding attorney's fees for work performed on claims litigated successfully by Chowdhry. As discussed above, Chowdhry was not successful on any of his claims, thus there was no need to limit attorney's fees to the claims on which Lapica prevailed. Because Chowdhry does not challenge the propriety of the award to Lapica, we are constrained to affirm Lapica's award of attorney's fees. We also affirm the award of costs to which respondents are entitled as prevailing parties. NRS 18.020.

Given our affirmance of Lapica's award of attorney's fees for reasons stated above, it is unnecessary to discuss Lapica's position with respect to an entitlement of fees under NRAP 38.

## CONCLUSION

For the reasons specified above, we affirm the orders and judgments entered by the district court in their entirety with the exception of the award of attorney's fees only in favor of respond-

ents American Health Care Management Home Care, Inc., NLVH, Silver, Wilchins and Moore, which we reverse and vacate.[3]

---

[3]The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.