ANDREW BARMETTLER, Appellant, v. RENO AIR, INC., Respondent.

No. 27849

ANDREW BARMETTLER, Appellant, v. RENO AIR, INC., Respondent.

No. 28100

April 16, 1998 956 P.2d 1382

*Kevin J. Mirch*, Reno, for Appellant.

*Walther, Key, Maupin, Oats, Cox, Klaich & LeGoy,* and *Michael E. Malloy,* Reno, for Respondent.

## OPINION

By the Court, MAUPIN, J.:

Reno Air employed appellant Andrew Barmettler ("Barmettler") from July 1992 to February 1993. In November of 1992, after informing his supervisors that he was suffering from an alcohol problem, Barmettler admitted himself into a residential treatment facility. Reno Air had previously adopted a written drug and alcohol policy which expressly stated that it would retain, in strict confidence, an employee's participation in any chemical dependency program. This policy was distributed to all employees.

Barmettler alleges that his supervisor discussed the situation with a number of Reno Air employees and that, after returning to work, he was "jeered" by a number of these co-workers. This allegedly caused him to contemplate suicide and seek additional psychotherapy. Thereafter, Barmettler was terminated.

Reno Air claims to have terminated Barmettler for circulating rumors that two Reno Air employees were having an illicit affair. Barmettler maintains that Reno Air terminated his employment in retaliation for his complaints in connection with his supervisor's violations of Reno Air's confidentiality policy.

Barmettler filed a complaint against Reno Air on April 24, 1994, alleging nine claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) lost wages; (7) wrongful termination; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. The case was assigned to an arbitrator on October 18, 1994.

On March 10, 1995, the district court granted summary judgment as to the following five claims for relief: breach of contract, breach of covenant of good faith and fair dealing, lost wages, negligent infliction of emotional distress, and wrongful termination.

The remaining four claims were arbitrated on June 5, 1995 (negligence, fraudulent misrepresentation, negligent misrepresentation and intentional infliction of emotional distress). Following a ruling in favor of Reno Air by the arbitrator, Barmettler filed a "Request for Trial De Novo." Reno Air then filed a motion for summary judgment as to the four arbitrated claims for relief.

In its November 20, 1995 order, the district court granted summary judgment on all four of the remaining claims. On December 22, 1995, the district court reduced its March 10 and November 20, 1995 orders to final judgment in favor of Reno Air. On January 31, 1996, the district court entered a separate order granting attorney's fees in the amount of $3,000.00 pursuant to Nevada Arbitration Rule ("NAR") 20(a). Barmettler appeals the summary judgment rulings in appeal No. 27849,[1] and the award of attorney's fees in appeal No. 28100.

Summary judgment is only appropriate when, after a review of the record viewed in a light most favorable to the nonmoving party, there remain no issues of material fact. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). "In determining whether summary judgment is proper, the nonmoving party is entitled to have the evidence and all reasonable

---

[1]Barmettler is not appealing the substance of the orders entering judgment on the claims for wrongful termination, negligence, breach of the implied covenant of good faith and fair dealing, and lost wages. Thus, although Barmettler has alleged that certain procedural defects led to the entry of these orders, the substance of these claims is not addressed in this opinion.

inferences accepted as true." Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989). However, the nonmoving party " 'is not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture.' " Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) (quoting Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976)).

On appeal, this court is "required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment." Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981). A party opposing summary judgment may not rely on the allegations of his pleadings to raise a material issue of fact where the moving party supports his motion with competent evidence. Garvey v. Clark County, 91 Nev. 127, 130, 532 P.2d 269, 271 (1975).

Barmettler raises several procedural issues on appeal, each of which will be discussed in turn.

*Whether the district court erred in considering unauthenticated documents when it granted partial summary judgment on March 10, 1995, as to five of Barmettler's claims*

Barmettler contends that several exhibits[2] were not properly authenticated; therefore, the district court erred in considering them in granting the first summary judgment motion. Further, Barmettler requested Rule 11 sanctions against Reno Air for improper authentication. We conclude that this argument is without merit because any authentication defects were cured before the final disposition in the court below. Also, several of the exhibits appear to have been self-authenticating in the context of these claims.

*Whether the district court erred in entertaining Reno Air's November 20, 1995 motion for summary judgment on the remaining claims litigated in arbitration*

As to Reno Air's second motion for summary judgment addressing the arbitrated claims (negligence, fraudulent misrepresentation, negligent misrepresentation, intentional infliction of

---

[2]Exhibit A—Personnel Information; Exhibit B—Plaintiff's Termination Notice; Exhibit C—Plaintiff's Application for Employment; Exhibit D—Partial Deposition of Curtis Andrew Barmettler; Exhibit E—the Affidavit of Kevin Kilcourse (Director of Human Resources at Reno Air); Exhibit F—Employee Handbook; Exhibit G—Reno Air Inc., Drug and Alcohol Policy.

emotional distress), Barmettler insists that the district court improperly reconsidered the same factual issues presented in the first summary judgment motion filed on December 23, 1994. Characterizing Reno Air's second motion for summary judgment as a motion for "reconsideration," Barmettler claims that, pursuant to Washoe District Court Rule 12(8),[3] the motion was untimely because it was not filed within ten days of the first order. In light of NRCP 56(b), which allows a defending party "at any time, [to] move with or without supporting affidavits for a summary judgment in his favor . . . ," and because the case had been more fully developed as of the time the second motion was lodged, we conclude that this argument must fail. Accordingly, there was no procedural impediment to Reno Air's second motion for summary judgment on the arbitrated claims.

We now move to the merits of the summary judgment orders.[4]

## Fraudulent misrepresentation

Barmettler alleges in his fourth claim for relief that Reno Air made fraudulent representations concerning its drug and alcohol program. Barmettler claims Reno Air induced him into accepting employment in July of 1992, and into entering an alcohol and drug rehabilitation program in November of 1992.

Under Nevada law, Barmettler has the burden of proving each and every element of his fraudulent misrepresentation claim by

---

[3]Washoe District Court Rule 12(8) provides in part:

8. The rehearing of motions must be done in conformity with D.C.R. 13, Section 7. A party seeking reconsideration of a ruling of the court, other than an order which may be addressed by motion pursuant to N.R.C.P. 50(b), 52(b), 59 or 60, must file a motion for such relief within 10 days after service of written notice of entry of the order or judgment, unless the time is shortened or enlarged by order. A motion for rehearing or reconsideration must be served, noticed, filed, and heard as any other motion. A motion for rehearing does not toll the 30-day period for filing a notice of appeal from a final order or judgment.

[4]As noted in n. 1, the negligence, breach of the implied covenant of good faith and fair dealing, wrongful termination and loss of wage claims are not specifically addressed in the text of this opinion. Although these claims are not the subject of this appeal, we conclude that the resolution of the negligent infliction of emotional distress and negligent misrepresentation claims are dispositive of the negligence claim; that the resolution of the breach of contract claim is dispositive of the breach of the implied covenant of fair dealing and the wrongful termination claims; and that the resolutions in favor of Reno Air on the various substantive claims, are dispositive of the separate claim for lost wages.

clear and convincing evidence: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992); Lubbe v. Barba, 91 Nev. 596, 599, 540 P.2d 115, 117 (1975). Further, "[w]here an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." Bulbman, 108 Nev. at 111, 825 P.2d at 592.

Reno Air provided proof that, at arbitration, Barmettler failed to produce any evidence demonstrating that Reno Air fraudulently induced him into accepting employment or seeking drug and alcohol therapy. In the absence of proof to the contrary, Barmettler's naked allegations on these issues were insufficient to raise a triable issue of fact. Again, it is fundamental that the nonmoving party may not rest on the allegations of his pleadings to successfully resist a motion brought under NRCP 56. Accordingly, summary judgment was appropriate as to Barmettler's fraudulent misrepresentation claim.

*Intentional infliction of emotional distress*

To establish a cause of action for intentional infliction of emotional distress, Barmettler must establish the following:

> (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.

Star v. Rabello, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (1981) (citations omitted).

We conclude that Barmettler has failed to establish either the first or second elements of this cause of action. Accordingly, summary judgment as to this claim was warranted.

*Negligent infliction of emotional distress*

We first examined negligent infliction of emotional distress for negligent acts committed directly against a plaintiff in Chowdhry v. NLVH, Inc., 109 Nev. 478, 851 P.2d 459 (1993). In *Chowdhry,* we observed:

We have not previously had occasion to decide whether a plaintiff may recover for negligent infliction of emotional distress for negligent acts committed directly against the plaintiff. In *State v. Eaton,* we first recognized a cause of action for negligent infliction of emotional distress where a bystander suffers "serious emotional distress which results in physical symptoms caused by apprehending the death or serious injury of a loved one due to the negligence of the defendant." The "physical impact" requirement has also been applied where, as here, the negligent act is alleged to have been committed directly against the plaintiff.

. . . .

In the present case, Chowdhry's emotional distress claims are premised upon respondents' accusations of patient abandonment. Chowdhry testified that as a result, "he was very upset" and could not sleep. Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement.

*Id.* at 482-83, 851 P.2d at 462 (citations omitted). We ultimately embraced this doctrine in Shoen v. Amerco, Inc., 111 Nev. 735, 748, 896 P.2d 469, 477 (1995).

Barmettler argues that the physical impact requirement is not mandatory in emotional distress claims. While we agree that "emotional overlay" claims, as has been the rule for many years, may be brought in the context of physical injury claims arising from a physical impact, we take this opportunity to clarify *Chowdhry's* implication that a "physical impact" may be required in cases brought under *Shoen.* We therefore hold that, in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of "serious emotional distress" causing physical injury or illness must be presented.

We conclude that the district court correctly found that the additional minimal therapy undergone by Barmettler did not satisfy the physical injury "or impact" requirement of *Chowdhry.* Accordingly, Barmettler's argument is without merit.

*Negligent misrepresentation*

Barmettler maintains that he relied on the promise of confidentiality as expressly stated in Reno Air's Drug and Alcohol Policy when he sought employment with Reno Air. In Bill Stremmel Motors, Inc. v. First National Bank of Nevada, 94 Nev. 131,

134, 575 P.2d 938, 940 (1978), we adopted the Restatement (Second) of Torts § 552 definition of the tort of negligent misrepresentation:

> (1) One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

The thrust of Reno Air's argument is that this tort only applies to business transactions; thus, in the context that Reno Air implemented its Drug and Alcohol Policy, this conduct does not fit squarely within a business or commercial transaction. We agree. Further, beyond this threshold approach to the doctrine, the alleged misrepresentations here do not give rise to this cause of action. Accordingly, Barmettler's claim must fail.

*Breach of contract*

A. *The At-Will Relationship*

As a threshold matter, Barmettler was an at-will employee; therefore, Reno Air could dismiss Barmettler with or without cause as long as the dismissal did not offend public policy. Vancheri v. GNLV Corp., 105 Nev. 417, 421, 777 P.2d 366, 369 (1989). In *Vancheri,* we also noted that an employee's subjective expectations cannot create a contract of employment. *Id.* The at-will employment relationship is rebuttable if the employee can prove by a preponderance of the evidence that a contract, either express or implied, required termination for cause only. Southwest Gas Corp. v. Vargas, 111 Nev. 1064, 1071, 901 P.2d 693, 697 (1995) (citing American Bank Stationery v. Farmer, 106 Nev. 698, 701, 799 P.2d 1100, 1101-02 (1990)).

Barmettler argues that, notwithstanding his at-will status, Reno Air's Drug and Alcohol Policy placed limitations on its ability to terminate him. As support, Barmettler cites Holmes v. Union Oil Co., 760 P.2d 1189 (Idaho Ct. App. 1988). In *Holmes,* a long-term employee notified his employer of a second DUI arrest, fearing that the arrest would lead to incarceration and, thus, termination. *Id.* at 1191. His employer offered to place him in a residential alcohol treatment program with the condition that he abide by the company's continuing rehabilitation plan following

his release from the treatment center. *Id.* The employer also submitted a five-page letter to the criminal court outlining its rehabilitation plan and reiterating that the employee's continued employment was conditioned on compliance with the plan. *Id.* In reliance on the plan, the criminal court suspended proceedings and placed the employee on court supervised probation for eighteen months. Unfortunately, about seven months into the probationary period, the criminal court revoked the probation for a technical violation of the conditions of probation.

In response, the company fired the employee. *Id.* at 1191-92. Following termination, the employee filed suit alleging that the rehabilitation plan constituted an express or implied contract of continued employment. Specifically, he asserted that, notwithstanding his at-will status, the company's five-page letter to the judge who had agreed to the terms of his probation, created a specified duration of employment or, at least, restricted the company's ability to terminate. *Id.* at 1192.

The *Holmes* court concluded that the finder of fact could view the rehabilitation program as creating a mutual understanding that employment would continue for at least eighteen months absent a termination for cause or if the employee should quit his job. The court reasoned that, although the letter clearly stated that the employee could be discharged for violating *its* terms, it was unclear whether a technical violation of probation would also constitute a violation of the terms of the letter and therefore grounds for discharge. Thus, under the circumstances set forth in *Holmes,* the jury concluded that the "at-will" relationship had been changed by the letter. *Id.* at 1193-94. The court, however, qualified its holding in a footnote:

> We do not hold or intimate that every job or training or rehabilitation program could alter an employee's at-will status. This case involves a unique nexus between an employee's participation in an employer-provided program and a grant of probation for a specific period in a criminal case at the mutual request of the employer and employee. Even in this unique circumstance, an employer desiring to maintain an at-will relationship could make an express disclaimer of intent to limit potential reasons for discharge or to create any expectation of continued employment for a certain duration. The record before us contains no such disclaimer.

*Id. Holmes* has no applicability to the case at bar. Barmettler's discharge had nothing to do with the breach of an express or implied covenant of continued employment created in derogation of the "at-will" arrangement that existed when he undertook and continued employment with Reno Air.

## B. *Disclaimers*

The first page of Reno Air's Employee Handbook contains a disclaimer that the handbook merely serves as an informative tool and does not create either an implied or express contract between the airline and its employees. The disclaimer also reminds Reno Air employees that they may be terminated at any time for any reason due to their at-will status.

We recently noted that employee handbooks which contain disclaimers that tend to contradict other promissory language in the handbooks are inherently ambiguous:

> "Thus, . . . the entire handbook, including any disclaimer, should be considered in determining whether the handbook gives rise to a promise, an expectation and a benefit.
>
> "As with any question of fact, this is primarily a matter for the jury to decide. The court should intervene to resolve the handbook issue as a matter of law only if the handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist."

Southwest Gas v. Vargas, 111 Nev. 1064, 1072, 901 P.2d 693, 697-98 (1995) (quoting Fleming v. Borden, Inc., 450 S.E.2d 589, 596 (S.C. 1994) (citations omitted)).

We conclude that, when read together, Reno Air's Employee Handbook and its Drug and Alcohol Policy do not create an inherent ambiguity with regard to Reno Air's express disclaimer that an employee's at-will status retains its vitality. Nor has Barmettler satisfied his burden of proof to the contrary. Accordingly, Barmettler's breach of contract claim was properly dismissed via summary judgment.

*Whether the district court erred by reviewing portions of the arbitration proceedings*

In ruling on Barmettler's fraudulent misrepresentation claim, the district court noted that Barmettler failed to introduce evidence at the arbitration which demonstrated that Reno Air intended to induce Barmettler into relying on its Drug and Alcohol Policy. Reaching this argument did not, in and of itself, violate NAR 20 relating to disclosures of arbitration awards. There was no jury to contend with and, as to any problem stemming from the trial judge's evaluation of those proceedings, the fact that Barmettler sought trial de novo alerted the judge as to the identity of the successful party at arbitration. Further, the

failure to provide proof at arbitration is relevant on either summary judgment or on motion to strike all or part of a request for trial de novo. Thus, the rule prohibiting unsealing of the award prior to final disposition was not offended. Accordingly, we conclude that this argument is without merit.

### Attorney's fees

In appeal No. 28100, Barmettler argues that Reno Air's attorney's fees in the amount of $3,000 are outrageous and excessive because no discovery, hearings, or motions were filed or heard between the filing of the request for trial de novo and the issuance of the second summary judgment order.

Reno Air notes that it incurred attorney's fees totalling approximately $6,835 which reflected preparation fees for its second motion for summary judgment, as well as formal and informal discovery.

### A. *Standard of Review*

Recently, we determined that a district court's award of attorney's fees will not be overturned absent a manifest abuse of discretion. Davidsohn v. Steffens, 112 Nev. 136, 911 P.2d 855 (1996). Likewise, we have explained that the grant of attorney's fees is within the court's discretionary ambit. University of Nevada v. Tarkanian, 110 Nev. 581, 590, 879 P.2d 1180, 1187 (1994); County of Clark v. Blanchard Constr. Co., 98 Nev. 488, 492, 653 P.2d 1217, 1220 (1982).

### B. *Nevada Arbitration Rule 20(A)*

NAR 20(A) creates a disincentive to relitigating an arbitration award. In the event of an adverse judgment at the trial de novo proceedings, the party requesting trial de novo risks paying the adverse party's attorney's fees.

Rule 20(A) provides in pertinent part:

Except as otherwise provided in this subsection, if the amount of the award in the trial de novo does not either exceed the arbitration award made to the party requesting the trial de novo, or reduce the liability imposed on that party by the arbitration award, the party requesting the trial de novo *must pay* to the adverse parties all recoverable costs and attorney's fees associated with the prosecution or defense of the trial de novo. Awards of attorney's fees may not exceed the total amount of $3,000 unless the court finds extraordinary circumstances justifying a higher award. (Emphasis added.)

We conclude that the fee award in this case was mandatory. Accordingly, the district court's award of attorney's fees must be affirmed.

Having concluded that each of Barmettler's claims is without merit, we accordingly affirm the district court's ruling.

YOUNG, J., concurs.

SHEARING, J., concurring:

I agree that the district court's order granting summary judgment should be affirmed. I address the dissent position that offering a drug rehabilitation program can change an at-will employment to contractual employment. Neither the language of the employee handbook nor the drug and alcohol policy, separately or together, make such a change. The employee's status is expressly "at-will." Furthermore, the public policy considerations are particularly compelling for not penalizing companies which do institute drug and alcohol rehabilitation programs. The law of this state should encourage such action. It is in the public interest, as well as in Reno Air's interest, that employees who have substance abuse problems be helped to overcome those problems. However, it is also in the public interest that Reno Air be free to terminate its employees in critical positions and not be required to maintain them in their positions even when there is only a suspicion that they cannot perform their duties safely and effectively. Reno Air is free to enter into employment contracts, but we should not lightly hold that they have inadvertently done so.

ROSE, J., with whom SPRINGER, C. J., joins, concurring in part and dissenting in part:

The claim of breach of contract presents factual issues that should have prevented the district court from granting summary judgment against Barmettler on this issue.[1] The majority opinion ignores our prior case law and substantially erodes an employee's right to rely on the documents presented at the inception of employment that form the employment contract.

A few days after commencing work for Reno Air, Barmettler received its employee handbook and drug and alcohol policy. We have held that handbooks and statements of policy or procedures received by an employee at or shortly after beginning employment can be viewed as setting forth all or a portion of the contract

---

[1] While Barmettler has abandoned the issue of wrongful discharge on appeal, the facts and the law on this issue are inextricably intertwined with his viable breach of contract claim.

of employment between the employer and employee. Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983). Viewing these documents in a light most favorable to Barmettler, a trier of fact could conclude that while the employment was, in general, "at will," it was expressly modified by Reno Air's drug policy. One could reasonably interpret the policy as providing that: (1) an employee's participation in the drug program will be strictly confidential, and (2) the employee cannot be terminated for reasons related to his or her participation in the drug program. If one believes Barmettler's view of the facts, Reno Air violated both contractual undertakings.

Barmettler states that his supervisors disclosed his participation in the drug program to other employees and that a number of coworkers harassed him about his drug problem when he returned to work after completing the program. A jury could find that Reno Air breached its agreement to keep confidential an employee's participation in the company sponsored drug program and award damages flowing from such breach. A jury could also find that Barmettler was fired because he bitterly complained about the breach of confidentiality and, thus, his termination flowed directly from the breach of contract. Therefore, summary judgment should have been precluded on this claim.

Barmettler's claim that his "at will" status was modified by Reno Air's drug policy finds support in the case of Holmes v. Union Oil Co., 760 P.2d 1189 (Idaho Ct. App. 1988). In *Holmes* an employee entered an employer sponsored residential alcohol treatment program and was required to abide by the employer's rehabilitation plan following release from the treatment center. After release and resumption of employment, the employee violated one of the terms of the rehabilitation plan and was fired. The employee brought suit on the basis that the drug rehabilitation plan had modified his status as an "at will" employee and that he could not be fired during his good faith participation in the drug rehabilitation plan.

The *Holmes* court concluded that the finder of fact could view the rehabilitation program as creating a mutual understanding that employment would continue for the duration of the drug rehabilitation plan absent a termination for cause or the employee quitting his job. *Id.* at 1194. The court, however, qualified its holding in a footnote:

> We do not hold or intimate that every job training or rehabilitation program could alter an employee's at-will status. This case involves a unique nexus between an employee's participation in an employer-provided program and a grant of probation for a specific period in a criminal case at the mutual request of the employer and employee. Even in this

unique circumstance, an employer desiring to maintain an at-will relationship could make an express disclaimer of intent to limit potential reasons for discharge or to create any expectation of continued employment for a certain duration. The record presently before us contains no such disclaimer.

*Id.* at 1194 n.1.

While the *Holmes* court substantially qualified its holding with the above quoted language, the decision still stands as authority for the proposition that a company's drug policy can modify an employee's "at will" status, as Barmettler asserts. The opinion also points out that an employer has the power to clarify that participation in an employer sponsored drug rehabilitation program in no way will modify the employee's "at will" status. Reno Air could have drafted this proviso in its drug policy, but did not. Therefore, the finder of fact could believe Barmettler's statement of the facts, find that his employment termination flowed from his good faith participation in the company's drug program, and that such action violated his contract of employment.

While I agree that the district court properly granted summary judgment on the rest of Barmettler's claims, issues of fact were presented concerning his claim for breach of contract and it was improper to dismiss this claim by summary judgment. Accordingly, I dissent to that portion of the majority opinion that affirms the dismissal of this claim.