**IDEAL ELECTRIC COMPANY,**
Plaintiff,

v.

**FLOWSERVE CORPORATION and**
**Lake Mead Constructors,**
Defendants.

Gilbert Western Corp. and Kiewit Western Co., Delaware corporations doing business as Lake Mead Constructors, a joint venture, Counterclaimants,

v.

Ideal Electric Company,
Counterdefendant.

Gilbert Western Corp. and Kiewit Western Co., Delaware corporations doing business as Lake Mead Constructors, a joint venture, Cross-claimants,

v.

Flowserve Corporation, a New York corporation, Safeco Insurance Company of America, a Washington corporation, Cross-defendants.

Flowserve Corporation, et al.,
Third–Party Plaintiff,

v.

Travelers Casualty & Surety Company of America, Third–Party Defendant.

No. CV–S–02–1092–DAE–LRL.

United States District Court,
D. Nevada.

Feb. 1, 2005.

William Urga, Jolley Urga Wirth & Woodbury, Las Vegas, NV, Jeffrey Golenbock, Golenbock, Eiseman, Assor, Bell & Peskoe, New York, NY, for Plaintiff Ideal Electric Company.

George Ogilvie, McDonald Carano Wilson, Las Vegas, NV, for Counter Claimant Kiewit Western Company.

George Ogilvie, McDonald Carano Wilson, Las Vegas, NV, Leroy Gire, Pro Hac Vice Firm, Law Office of Leroy M. Gire, Glendale, CA, for Defendant Lake Mead Constructors.

Corby Arnold, Corby D. Arnold, P.C., Las Vegas, NV, for Cross Defendant Flowserve Corp.

Corby Arnold, Corby D. Arnold, P.C., Las Vegas, NV, Christopher Bechhold, Thompson Hine & Flory LLP, Cincinnati, OH, for Defendant Flowserve Corp.

*ORDER DENYING LAKE MEAD CONSTRUCTORS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST IDEAL ELECTRIC COMPANY ON LMC'S COUNTERCLAIMS; ORDER GRANTING IN PART AND DENYING IN PART IDEAL ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT DISMISSING LAKE MEAD CONSTRUCTORS' COUNTERCLAIMS*

DAVID ALAN EZRA, Chief Judge.

The Court heard Defendant Lake Mead Constructors' motion and Plaintiff Ideal Electric Company's motion on December 14, 2004. Jeffrey Golenbock, Esq., appeared at the hearing on behalf of Plaintiff Ideal Electric Company; Christopher Bechhold, Esq., appeared at the hearing on behalf of Flowserve Corporation; George Ogilvie, Esq., appeared at the hearing on behalf of Lake Meade Constructors. After reviewing the motions and the supporting and opposing memoranda, the Court DENIES Lake Mead Constructors' Motion for Summary Judgment Against Ideal Electric Company on LMC's Counterclaims, and GRANTS IN PART AND DENIES IN PART Ideal Electric Company's Motion for Summary Judgment Dismissing Lake Mead Constructors' Counterclaims.

## BACKGROUND

The Southern Nevada Water Authority (the "SNWA") engaged in a program to increase the reliability and capacity of the water system that provides water from the Colorado River to the Las Vegas metropolitan area. One component of the $2 billion capital improvement program is the Raw Water Pumping System Project ("Project"). In October 1998, the SNWA entered into Contract No. SNWA 070–B ("Prime Contract") with Defendant Lake Mead Constructors ("LMC"), under which the parties agreed that LMC would serve as the prime contractor for the Project. According to LMC, the Prime Contract specified that the substantial completion date of the Project would be June 29, 2001, and the final completion date of the Project would be November 1, 2001.

In its capacity as general contractor, LMC entered into a contract on December 14, 1998, ("Material Contract") with Ingersoll–Dresser Pump Company, which is the predecessor in interest of Defendant Flowserve. Pursuant to this contract, Flowserve agreed to provide sixteen pumps

with electric motors. In February of 1999, Flowserve entered into a sub-contract ("Motor Contract") with Plaintiff Ideal Electric Company ("Ideal") to provide 16 electric motors for the pumps for a purchase price of $3,150,000.

Ideal claims that it performed in conformance with this contract, and was never paid in full. Ideal filed suit against Flowserve and LMC on August 20, 2002, seeking the amount alleged due and an additional amount for materials that it supplied to LMC. LMC maintains that Ideal's motors did not comply with SNWA specifications, causing delays and ultimately the assessment of liquidated damages by SNWA against LMC. LMC filed a counterclaim against Ideal on December 20, 2002, alleging negligent interference with prospective economic advantage, intentional misrepresentation, and negligent misrepresentation. The SNWA specification at issue required that the motors be tested to ensure that the maximum radial shaft runout did not exceed a certain number of mils peak to peak at slow roll speeds of less than 100 rpm.

Ideal filed a motion for summary judgment seeking dismissal of LMC's counterclaims on October 10, 2003. LMC filed a motion for summary judgment on its counterclaims on October 14. LMC filed an opposition to Ideal's motion for summary judgment on October 21; LMC's reply in support of its own motion for summary judgment was filed on November 13. Ideal filed its opposition to LMC's motion for summary judgment on October 28, and its reply in support of its own summary judgment motion on November 10.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec. Serv.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

### DISCUSSION

I. *LMC's first cause of action against Ideal must be DISMISSED for failure to state a claim, because Nevada does not recognize a cause of action for negligent interference with economic advantage, and LMC did not plead intentional interference with contract in its counterclaim.*

In Defendant LMC's first claim against Plaintiff Ideal, LMC asserts that Ideal is liable for negligent interference with LMC's prospective economic advantage. This is so, LMC maintains, because: (1) Ideal's performance directly affected LMC's ability to perform on its Prime Contract; (2) Ideal knew that its performance would affect LMC, but persisted in noncompliance with its contractual duties;

and (3) this failure by Ideal caused appreciable harm to LMC in the form of liquidated damages assessed by SNWA.

LMC bases its legal argument on *Chameleon Engineering Corp. v. Air Dynamics Inc.*, in which the California Supreme Court set forth the elements of the tort of negligent interference with prospective economic advantage. 101 Cal.App.3d 418, 161 Cal.Rptr. 463 (1980). In *Chameleon Engineering*, the court explained that the following five criteria will be assessed in determining whether a plaintiff has stated such a cause of action: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *Id.* at 465.

In evaluating Defendant LMC's cause of action for negligent interference with prospective economic advantage, however, this Court has no need to engage in the inquiry established by the California Supreme Court. This case arises under Nevada law, and as Plaintiff Ideal has noted, the Nevada Supreme Court has explicitly rejected this tort. In *Local Joint Executive Board of Las Vegas Culinary Workers Union, Local No. 226 v. Stern*, the court expressly considered this cause of action and rejected it, holding that in Nevada only intentional interference with contractual relations will be actionable. 98 Nev. 409, 651 P.2d 637, 638 (1982). The court explained:

> The well established common law rule is that absent privity of contract or an injury to person or property, a plaintiff may not recover in negligence for economic loss. ... The primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic

consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable.

*Id.* (internal citations omitted.) Consequently, the law of Nevada permits no recovery for negligent interference with prospective economic advantage.

In Defendant LMC's Opposition to Ideal Electric Company's Motion for Summary Judgment, LMC counters that this Court should nonetheless grant its motion for summary judgment and deny that of Plaintiff, because Plaintiff additionally committed intentional interference with contract. Defendant LMC's counterclaim alleges three causes of action against Counterclaim Plaintiffs: negligent interference with prospective economic advantage, intentional misrepresentation, and negligent misrepresentation. Nowhere in this complaint does LMC allege Plaintiff committed the tort of intentional interference with contract. Likewise, Defendant LMC has at no point sought leave of court to amend its pleadings to add such a claim.

Federal Rule of Civil Procedure 8(a) requires that plaintiffs—or in this case, counterclaim plaintiffs—provide merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The U.S. Supreme Court has elaborated that a plaintiff "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Despite the lenience of the modern federal system of notice pleading, plaintiffs must at a minimum allege facts in the pleadings sufficient to place defendants on notice of plaintiffs' claims. "It is too often overlooked that federal pleading is still issue

pleading, presenting a definite issue for adjudication." *Padovani v. Bruchhausen,* 293 F.2d 546, 550 (2nd Cir.1961). Pretrial memoranda and affidavits are not considered to be "pleadings" as the term is used by the Federal Rules of Civil Procedure. *See, e.g., McNair v. Monsanto Co.,* 279 F.Supp.2d 1290 (M.D.Ga.2003); *Marsh v. Johnson,* 263 F.Supp.2d 49 (D.D.C.2003); *Miller v. Brown & Williamson Tobacco Corp.,* 679 F.Supp. 485 (E.D.Pa.1988); *Lockert v. Faulkner,* 574 F.Supp. 606, 609 n. 3 (N.D.Ind.1983). In this case, Defendant LMC's counterclaim does not meet the minimal standard of notice that is required to raise this issue. Allowing LMC to proceed at this stage with an argument that was raised in a responsive pleading and that is factually contrary to the gravamen of the counterclaim on file would render even the most lenient notice pleading requirement a nullity.

In sum, as no later ruling or change of circumstances has occurred to undermine the holding of *Stern,* this Court is bound by its rule. And, as Defendant LMC did not allege facts in its counterclaim sufficient to place Plaintiff on notice that Defendant LMC would be asserting a claim of intentional inference with contract, no argument on such a cause of action will be entertained by this Court. As such, Defendant LMC's motion for summary judgment is DENIED as to this counterclaim, and Plaintiff Ideal's motion for summary judgment is GRANTED as regards to this counterclaim.

II. *Both Plaintiff's and Defendant LMC's motions for summary judgment on Defendant LMC's counterclaim of intentional misrepresentation must be DENIED, because material fact issues remain to be resolved at trial.*

Defendant LMC's second counterclaim cause of action against Plaintiff Ideal seeks recovery for the tort of intentional misrep-

resentation. In support of this claim, Defendant LMC's counterclaim alleges the following facts: Ideal represented that it had the ability to furnish materials conforming to the Prime Contract's specifications; these representations were false; Ideal either had knowledge of or reckless disregard toward the falsity of these statements; Ideal made the representations to induce LMC to submit Ideal as the pump manufacturer to SNWA, to in turn induce SNWA to accept Ideal; LMC did submit Ideal as the pump manufacturer in reasonable reliance; and, as a proximate result of Ideal's actions, LMC has suffered over $10,000 in damages and will continue to suffer further damages in the future. (LMC First Am. Countercl. at 18–24.)

■ Under Nevada law, a plaintiff must prove the following in order to state a claim for intentional misrepresentation:

(1) A false representation was made by the defendant;

(2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation;

(3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and

(4) damage to the plaintiff as a result of the misrepresentation.

*Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 956 P.2d 1382, 1386 (1998).

■ Defendant LMC's motion for summary judgment on this counterclaim and the supporting memoranda and exhibits bring at least some evidence to support all four elements. LMC cites to the provisional and final scope letters issued by Ideal as evidence that Ideal made the representation that it could conduct slow roll shaft runout at less than 100 rpm. (LMC Mot. for Sum. Judg. at 5 (citing LMC Ex. 6).) As evidence that Ideal knew this to

be untrue, it cites both the deposition of Ideal's engineering manager, who testified that he personally knew that its data acquisition equipment could not record values less than 100 rpm, as well as evidence indicating that Ideal did not actually test the motors at the speeds indicated in the scope letters. (LMC Mot. for Sum. Judg. at 6 (citing Riggenbach Depo. at 36:1–4, 41:12–22).) Given the nature of the transaction into which the parties were entering, the Court finds that a fact-finder could reasonably infer from the circumstantial evidence that, if Ideal indeed made misrepresentations, they were made to induce the acceptance of Ideal as the motor manufacturer.

On the issue of damages, LMC cites the terms of the prime contract, which provides that LMC would be assessed liquidated damages if the materials did not meet contract specifications and the project was not completed in a timely manner. (LMC Reply at 7 (citing Ex. 23 at 80:20–81:1).) LMC also cited correspondence between LMC and SNWA that indicated that SNWA did not deem any of the motors to have conformed to prime contract specifications. (LMC Reply in Sup. of Mot. For Sum. Judg. at 3–4 (citing SNWA letter of August 8, 2001).) Further, LMC cites evidence that liquidated damages were actually assessed against LMC. (LMC Opp'n to Ideal's Mot. for Sum. Judge. at 14 (citing LMC Memo. in Supp. of Mot. for Sum. Judg. Against Flowserve at 4.))

Plaintiff Ideal, on the other hand, has brought forth at least some evidence that would tend to negate each of the four elements. Ideal has submitted declarations attesting that it made no representations to LMC as to its ability to test the motors at slow roll speeds of 100 RPMs or less. (Colangelo Decl. at 9.) Rather, Ideal maintains that the only representation it made was that it took exception to this requirement. (Colangelo Decl. at 10.) Ideal also cites evidence indicating that it can, and in fact did, produce motors that comply with the contract's specifications. (Colangelo Decl. at 16.) As such, Ideal also argues that none of the representations were untruthful. Moreover, Ideal argues that there was no damage to LMC. Ideal backs this assertion with testimony indicating that little or no delay resulted from Ideal's actions. (Ideal Mot. for Sum. Judg. at 16 (citing Ryan Tr. at 23; McClure Tr. 140; House Tr. at 20–22).)

After reviewing the parties' memoranda and exhibits, the Court finds that this dispute is not suitable for resolution at the summary judgment stage, because plain differences exist as to material facts. While neither party has submitted sufficient, uncontroverted evidence to persuade this Court to rule on the merits in its favor at this stage, each party has made the minimum showing to survive the other's motion for summary judgment. Thus, as regards this counterclaim, the Court DENIES both LMC's and Ideal's motions for summary judgment.

III. *Both Plaintiff's and Defendant LMC's motions for summary judgment on Defendant LMC's counterclaim of negligent misrepresentation must be DENIED, because material fact issues remain to be resolved at trial.*

Defendant LMC's third counterclaim cause of action against Plaintiff Ideal seeks recovery for the tort of negligent misrepresentation. In support of this claim, Defendant LMC's counterclaim alleges the following facts: Ideal entered into the motor contract for pecuniary gain and in the course of its business; Ideal represented that it had the ability to furnish materials conforming to the prime contract's specifications; these representations were false

when made; Ideal failed to exercise reasonable care to determine whether it could actually furnish materials according to the contract's standards; Ideal's representations were made to induce the acceptance of Ideal as the motor manufacturer; in reasonable reliance on these representations, LMC submitted Ideal as the motor manufacturer to SNWA, which then accepted Ideal as such; and, as a proximate result of Ideal's actions, LMC has suffered over $10,000 in damages and will continue to suffer further damages in the future. (LMC First Am. Countercl. at 27–33.)

■ Under Nevada law, the elements of the tort of negligent misrepresentation are:

(a) a representation that is false;

(b) this representation was made in the course of the defendant's business, or in any action in which he has pecuniary interest;

(c) the representation was for the guidance of others in their business transactions;

(d) the representation was justifiably relied upon;

(e) this reliance resulted in pecuniary loss to the relying party; and

(f) the defendant failed to exercise reasonable case or competence in obtaining or communicating the information.

See *Bill Stremmel Motors, Inc., v. First Nat'l Bank of Nevada*, 94 Nev. 131, 134, 575 P.2d 938 (1978).

■ Defendant LMC's motion for summary judgment on this counterclaim and the supporting memoranda and exhibits bring at least some evidence to support all six elements. As mentioned above, LMC cites to the provisional and final scope letters issued by Ideal as evidence that Ideal made the representation that it could conduct slow roll shaft runout at less than 100 rpm. (LMC Mot. for Sum. Judg. at 5 (citing LMC Ex. 6).) As evidence that this representation was untrue, LMC again cites both the deposition of Ideal's engineering manager, who testified that Ideal's data acquisition equipment could not record values less than 100 rpm, as well as evidence indicating that Ideal did not actually test the motors at the speeds indicated in the scope letters. (LMC Mot. for Sum. Judg. at 6 (citing Riggenbach Depo. at 36:1–4, 41:12–22).) Given the nature of the transaction into which the parties were entering, the Court finds that a fact-finder could reasonably infer from the circumstantial evidence submitted by the parties that, if Ideal indeed made misrepresentations, they were made in the course of its business and "for the guidance of" the parties to the transaction.

On the issue of damages, LMC again cites the terms of the prime contract, which provides that LMC would be assessed liquidated damages if the materials did not meet contract specifications and the project was not completed in a timely manner. (LMC Reply at 7 (citing Ex. 23 at 80:20–81:1).) LMC also cited correspondence between LMC and SNWA that indicated that SNWA did not deem any of the motors to have conformed to prime contract specifications. (LMC Reply in Sup. of Mot. For Sum. Judg. at 3–4 (citing SNWA letter of August 8, 2001).) Further, LMC cites evidence that liquidated damages were actually assessed against LMC. (LMC Opp'n to Ideal's Mot. for Sum. Judge. at 14 (citing LMC Memo. in Supp. of Mot. for Sum. Judg. Against Flowserve at 4.)) The Court finds that, given inferences a reasonable factfinder could draw from the evidence LMC has brought forth, LMC's allegations regarding reliance and breach of a duty of care are not wholly unsupported. Thus, LMC has made a minimal showing regarding all of the required elements.

Plaintiff Ideal, however, has brought forth evidence that would tend to negate

these elements. Ideal again brings forth declaration testimony asserting that Ideal never made any representation to LMC. (Ideal Mot. for Sum. Judg. at 18 (citing Colangelo Decl. at 9).) Ideal also claims that, to the extent any representation was made, it was not false. To support this, Ideal brings evidence indicating that it can, and in fact did, produce motors that comply with the contract's specifications. (Colangelo Decl. at 16.) Ideal also brings evidence to support its contention that there was no detrimental reliance or causation of damages because 13 of the motors met contract specifications by the deadline, and the parties reached an agreement as to the others. (Ideal Memo. In Opp. to LMC's Mot. for Sum. Judg. at 15 (citing Ulrey Tr. at 28, Peebles Tr. at 149, 153; Lanterman Tr. at 188; Powers Tr. at 217, 220; Shuggi Tr. at 171–173).)

Therefore, after reviewing the parties' memoranda and exhibits, the Court finds that this dispute is also unsuitable for resolution at the summary judgment stage, because again plain differences exist as to material facts. To rule on the merits at this time, the Court would be required to make a credibility determination as to competing assertions of fact—an action which is clearly impermissible at the summary judgment stage. Thus, as regards this counterclaim, the Court DENIES both LMC's and Ideal's motions for summary judgment.

## CONCLUSION

In summary, LMC's first counterclaim fails as a matter of law, because Nevada does not recognize a cause of action for negligent interference with prospective economic advantage. Regarding LMC's counterclaims for intentional misrepresentation and negligent misrepresentation, the memoranda and exhibits submitted by the parties reveal disputes as to material facts. Therefore, the Court DENIES Lake Mead Constructors' Motion for Summary Judg-

ment on LMC's Counterclaims, and DENIES IN PART AND GRANTS IN PART Ideal Electric Company's Motion for Summary Judgment on LMC's Counterclaims.

IT IS SO ORDERED.