Nicholas S. SCAFFIDI, Plaintiff,

v.

UNITED NISSAN, a Nevada corporation; Nissan Motor Acceptance Corporation, a California corporation; and Does 1 through 20, inclusive, Defendants.

Nicholas C. Scaffidi, Plaintiff,

v.

United Nissan, a Nevada corporation; Nissan Motor Acceptance Corporation, a California corporation; and Does 1 through 20, inclusive, Defendants.

Forman Automotive, Inc., dba United Nissan, Third–Party Plaintiff,

v.

Nicholas S. Scaffidi, Third–Party Defendant.

No. CV–S–04–1366–PMP LRL.

United States District Court, D. Nevada.

Nov. 28, 2005.

Grenville T. Pridham, Law Office of Grenville Pridham, Las Vegas, NV, for Plaintiffs, ThirdParty Defendant and Counter Defendant.

Robert J. Caldwell, Ann L. Thomas, Kolesar & Leatham, Chtd., Las Vegas, NV, for Defendants and ThirdParty Plaintiff.

Jeffrey A. Bendavid, Moran & Associates, Las Vegas, NV, for Defendants, ThirdParty Plaintiff and Counter Claimant.

Nicholas S. Scaffidi, Marietta, CA, Pro se.

## ORDER

PRO, Chief Judge.

Presently before this Court is Defendant/Third Party Plaintiff United Nissan's Motion for Summary Judgment of All Counts Alleged in Nicholas S. Scaffidi's Complaint or Alternatively a Motion to Exclude Spoiled Evidence (Doc. # 78) filed on July 5, 2005. Plaintiff Nicholas C. Scaffidi filed Nicholas C. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment of All Counts Alleged in Nicholas C. Scaffidi's Complaint or Alternatively a Motion to Exclude Spoiled Evidence and Motion to Dismiss Claims Three and Four of Nicholas C. Scaffidi's Complaint (Doc. ## 92, 93) on July 25, 2005.

Defendant Nissan Motor Acceptance Corporation ("NMAC") filed Defendant NMAC's Joinder in Defendant United Nissan's Motion for Summary Judgment or Alternatively Motion to Exclude Spoiled Evidence (Doc. # 79) on July 6, 2005. Plaintiff Nicholas S. Scaffidi filed Plaintiff Nicholas S. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment (Doc. # 94) on July 25, 2005. Defendant NMAC filed NMAC's Reply to Nicholas S. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment or to Exclude Spoiled Evidence (Doc. # 99) on August 5, 2005. Defendant/Third-Party Plaintiff United Nissan filed United Nissan's Reply to Plaintiff Nicholas C. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment and Defendant/Third-Party Plaintiff United Nissan's Strike Certain Allegations made by Grenville Pridham in Plaintiff Nicholas C. Scaffidi's Opposition (Doc. ## 103, 104, 105, 106) on August 4, 2005. NMAC filed Defendant NMAC's Joinder in Defendant United Nissan's Reply to Plaintiff Nicholas S. Scaffidi's Brief in Opposition to Defendant United Nissan's Motion for Summary Judgment and Defendant NMAC's Joinder in Defendant United Nissan's Motion to Strike Certain Allegations Made by Grenville Pridham, Esq. in Plaintiff Nicholas S. Scaffidi's Opposition (Doc. ## 114, 115) on August 19, 2005.

## I. BACKGROUND

This case arises out of a contract dispute regarding Defendant United Nissan's sale of a used Chevrolet Camaro ("Camaro"), manufacturer's serial number 2G1FP32KX12113873, to Nicholas S. Scaffidi. (Three–Day Notice of Intent to Take Default [Doc. # 19], Ex. A.) On October 1, 2002, Nicholas S. Scaffidi bought the car from United Nissan ("Nissan") for $26,566.06. (Compl.; Three–Day Notice of Intent to Take Default, Ex. A.) Nicholas S. Scaffidi traded a 1995 Pontiac Trans Am ("Trans Am"), in exchange for a $5000 credit as part of the negotiated deal for the Camaro. (Three–Day Notice of Intent to Take Default, Ex. A.) Nicholas C. Scaffidi is Nicholas S. Scaffidi's father.

Plaintiffs' claims involve three separate issues. First, Plaintiffs allege Defendants sold the Camaro without disclosing major structural damage the car had sustained and that Defendants refused to honor the warranties covering the contract. (Compl. at 7–8.) Plaintiffs allege that Defendants did not honor Nicholas S. Scaffidi's legal rescission of the contract. (Compl. at 7–8.) Second, Plaintiffs allege that Defendants fraudulently conducted the credit application process and contract negotiation in connection with the sale of the Camaro. (Id. at 6–7.) Plaintiffs allege Defendants negligently and wilfully used the social security number of Nicholas C. Scaffidi, Nicholas S. Scaffidi's father, to sell the Camaro to Nicholas S. Scaffidi. (Id.) Additionally, Plaintiffs allege that Defendants manipulated the sales process to add addi-

tional, unapproved fees to the final sale price. (*Id.* at 7.)

Plaintiffs and Defendants offer significantly different versions of the transaction. Plaintiffs allege that Defendants sold Nicholas S. Scaffidi the Camaro without divulging significant prior damage, and then refused to honor the warranty on the car. Plaintiffs argue that a window placard, allegedly removed from the window of the Camaro, establishes that the Camaro was covered by a partial warranty. (Pl. Nicholas S. Scaffidi's Brief in Opp'n to Def. Nissan Motor Acceptance Corp.'s Mot. for Summ. J. ["Pl.'s Opp'n"], Ex. 4.) Specifically, the window placard, which appears to be titled "Buyers Guide," provides:

> Limited Warranty. The dealer will pay 50% of the labor and 50% of the parts for the covered systems that fail during the warranty period.

(*Id.*) The window placard specifies the duration of the warranty as "1 month or 1000 miles." (*Id.*) NMAC offers a different buyers guide for the Camaro, VIN 2G1FP32KX12113873 (Nissan Motor Acceptance Corp.'s Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment NMAC's Mot. for Summ. J., Ex. A at Ex. 2.) This Buyers Guide states that the Camaro is sold "AS IS—NO WARRANTY." (*Id.*) The Buyers Guide further states, "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." (*Id.*) The Simple Interest and Vehicle Contract between Nicholas S. Scaffidi and Nissan provides:

> If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulation may require a special buyer's guide to be displayed on the window.

(Three–Day Notice of Intent to Take Default, Ex. A.)

The parties provide two copies of an "After Sale Work Agreement," both signed by Nicholas S. Scaffidi. (Def./ Third–Party Pl. United Nissan's Mot. for Summ. J. of All Accounts Alleged by Nicholas S Scaffidi's Compl. or Alternatively a Mot. to Exclude Spoiled Evidence ["Def.'s Mot. Summ. J."], Ex. B.) The first copy, dated October 1, 2002, includes the typed statement, "SOLD AS IS OR AS EQUIPPED—NOTHING ELSE PROMISED OR IMPLIED—PLEASE INITIAL," next to which Nicholas S. Scaffidi signed his initials. (*Id.* (emphasis in original).) That contract was not signed by a Nissan sales manager. (*Id.*) A second copy, which is undated, includes the handwritten statement, "SOLD AS IS—Nothing Else Promised or Implied." (*Id.*) Nicholas S. Scaffidi did not initial next to the handwritten statement. However, he did initial the agreement in five other places and placed his full signature at the bottom of the agreement. (*Id.*) Both copies include the following statement:

> Any and all promises made to you, by any representative of United Nissan, must be in writing or will NOT be honored . . . .

(*Id.*)

With regard to the transaction, Nicholas S. Scaffidi alleges Nissan affirmatively misrepresented the car's actual price, and manipulated the credit process to trick Scaffidi into paying more for the car. (Compl. at 2–3.) Plaintiffs further allege that Nissan fraudulently used Nicholas C. Scaffidi's social security number to process the credit application. (*Id.* at 6–7.) Nissan contends that Nicholas S. Scaffidi fraudulently provided his father's social security number to buy the car. (Def.'s Mot. for Summ. J. at 25–26.)

Virginia Gunn ("Gunn"), a Senior Account Representative for Defendant Nissan Motor Acceptance Corporation

("NMAC"), states in a sworn affidavit that as part of the credit application process, Nicholas S. Scaffidi listed his social security number as XXX–XX–9451. (NMAC's Mot. for Summ. J., Ex. A, Ex. 2. at 2.) On October 2, 2005, NMAC approved Nicholas Scaffidi for financing. (*Id.* at 2–3.) Gunn states that on October 12, 2005, Nicholas S. Scaffidi informed NMAC that the social security number provided was Nicholas C. Scaffidi's social security number, yet it was Nicholas S. Scaffidi who signed the Camaro's sales contract. (*Id.* at 3.) As of the time of the affidavit, Gunn states that Nicholas S. Scaffidi has not paid any payments for the Camaro. (*Id.* at 4.) The amount due and owing on the Camaro was $29,733.94, as of June 17, 2005. (*Id.* at 5.)

Immediately following the car purchase, Nissan assigned the loan to NMAC, making NMAC the creditor. (NMAC's Mot. for Summ. J., Ex. A.) Approximately three weeks after Nicholas S. Scaffidi signed the initial contract, Plaintiff alleges Nissan called him and offered him a lower annual percentage rate on his car. (*Id.*) Nicholas S. Scaffidi allegedly returned to Nissan and signed a second contract, which also was assigned to NMAC. (*Id.*)

Within days of driving the car off the lot, Nicholas S. Scaffidi claims the car experienced significant mechanical problems, including wiring and brake issues. (*Id.*) Nicholas S. Scaffidi allegedly took the car to Fairway Chevrolet, which informed him that the car had been in a major accident, had underwent significant mechanical and structural work, including the replacement of many parts, none of which would be covered under the manufacturer's warranty. Plaintiffs provide no evidence of this inspection. Nicholas S. Scaffidi claims he took the car back to Nissan for repairs. After getting the car back from Nissan, Nicholas S. Scaffidi allegedly continued to experience problems with the Camaro. Again, Plaintiffs provide no doc-umentation regarding the alleged problems associated with the vehicle nor of Nissan's inspection.

On November 1, 2002, Nicholas S. Scaffidi sent a letter entitled "Demand for Return of Nicholas Scaffidi's Pontiac Trans Am." (Def. NMAC's Qualified Non–Opp'n to Attorney Grenville Pridham's Mot. to Withdraw as Attorney in Charge for Nicholas S. Scaffidi, Ex. A.) In the letter, Nicholas S. Scaffidi alleges that the Camaro was in a prior undisclosed accident and was salvaged from a rental car company. (*Id.*) Troy Matthews ("Matthews"), Nissan's general sales manager, responded to Nicholas S. Scaffidi by letter on November 20, 2005. (*Id.*) Matthews informed Nicholas S. Scaffidi that in response to his letter, Nissan conducted a full history search of the vehicle which verified that the car's history did not show prior ownership as alleged by Plaintiffs. (*Id.*) Furthermore, Matthews informed Nicholas S. Scaffidi that following his request, Nissan had taken the Camaro to a third-party body shop which confirmed the Camaro did not suffer prior structural damage. (*Id.*) Neither party provides further evidence of this inspection.

Shortly thereafter, Nicholas S. Scaffidi was in a major accident involving the Camaro, resulting in a "total loss" as deemed by Progressive Insurance ("Progressive"). Progressive paid $16,275 to Scaffidi in reimbursement for the vehicle's loss. (Def.'s Mot. for Summ. J., Ex. D.) In communication with Progressive, Scaffidi indicated that he had to collect information regarding the car to send to his attorney in preparation for pending litigation regarding the sale of the car. (Def.'s Mot. for Summ. J., Ex. A.)

Nicholas S. Scaffidi alleges that during the accident, the Camaro's airbags did not inflate despite the major collision. He further alleges, there were no airbags to in-

flate because the Camaro's airbag cavities were empty upon sale from Nissan. Nicholas S. Scaffidi does not provide any evidence regarding the airbags, and upon review of the record, the Court can find no evidence pertaining to the airbags.

After the accident, the car was brought to Bill Heard Chevrolet ("Bill Heard"). Bill Heard and Progressive informed Nicholas S. Scaffidi and his attorney, Grenville Pridham ("Pridham"), that it would be Nicholas S. Scaffidi's responsibility to pay the vehicle's salvage and storage costs. (*Id.*) There is no evidence as to Nicholas S. Scaffidi's response. Bill Heard contacted Nicholas S. Scaffidi and Pridham twice more, including to notify them of a possible lien sale on the car, if it was not paid for and picked up to be put in storage. (*Id.*) There is no evidence as to Nicholas S. Scaffidi's response. The Camaro was sold for scrap sometime after, and is no longer available for examination of evidence.

This is a consolidated action. Both Nicholas S. and Nicholas C. Scaffidi filed separate Complaints on October 1, 2004. On February 18, 2005, this Court consolidated the two cases. (Stip. and Order for Consolidation (Doc. #21).) In his Complaint, Nicholas S. Scaffidi alleges Defendants violated the Magnuson–Moss Warranty Act (claim 1), Truth in Lending Act violations (claim 2), Violations of the Fair Credit Reporting Act against All Defendants (claim 3), rescission for material misrepresentation of facts (claim 4), violations of the Nevada Deceptive Trade Practices Act (claim 5), breach of implied warranty of merchantability (claim 7), breach of implied warranty of fitness for particular use (claim 8), revocation of acceptance (claim 9), holder liability of assignee (claim 10), actual and constructive fraud for misrepresentations and charging and collecting extra money (claim 11), conversion (claim 12), violation of Nevada Revised Statute 482.36395 unfair practices (claim 13),

breach of obligation of good faith (claim 14), and product liability (claim 15). (Compl.)

In his Complaint, Nicholas C. Scaffidi alleges claims for liability under the Fair Credit and Reporting Act (claim 1), violation of the Nevada Deceptive Trade Practices Act (claim 2), violation of the Installment Sales Act (claim 3), and violation of Nevada Revised Statute 482.36395 (claim 4). On July 25, 2005, Plaintiff Nicholas C. Scaffidi moved to dismiss his claims for violation of the Installment Sales Act (claim 3) and violation of Nevada Revised Statute 482.36395 (claim 4). (Pl. Nicholas C. Scaffidi's Brief in Opp'n to Def. United Nissan's Mot. for Summ. J. of all Counts Alleged in Nicholas C. Scaffidi's Compl. or Alternatively a Mot. to Exclude Spoiled Evidence and Motion to Dismiss Claims Three and Four of Nicholas C. Scaffidi's Compl. at 4.)

On May 5, 2005, NMAC served Nissan Motor Acceptance Corporation's First Set of Requests for Admissions to Nicholas S. Scaffidi and Nissan Motor Acceptance Corporations First Set of Requests for Admissions to Nicholas C. Scaffidi. (NMAC's Mot. for Summ. J., Ex C, D.) Neither Plaintiff responded to NMAC's request. Failure to answer a request for admissions deems the matter admitted under Federal Rule of Civil Procedure 36. Fed.R.Civ.P. 36; *O'Campo v. Hardisty*, 262 F.2d 621, 623 (9th Cir.1958); *see also Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir.1981). Thus Plaintiffs admitted each statement in NMAC's request by failing to timely respond. *Id.*

On June 24, 2005, Plaintiffs moved to amend their admissions to NMAC's request. (Pls. Nicholas S. Scaffidi and Nicholas C. Scaffidi's Mot. for Leave to Amend its Answers to Def. Nissan Motor Acceptance Corp.'s Request for Admissions

[Doc. # 68].) On July 20, 2005, the Honorable Lawrence R. Leavitt, Magistrate Judge for the United States District Court for the District of Nevada, denied Plaintiffs' motion to amend citing Federal Rules of Civil Procedure 16(b) and 36(b). (Order dated July 20, 2005 [Doc. # 88].) Plaintiffs moved this Court to reconsider the Magistrate's July 20, 2005 Order and this Court denied Plaintiffs' motion.

Plaintiff Nicholas S. Scaffidi admits that he provided Nissan with his father's social security number when applying for credit to purchase the Camaro. (NMAC's Mot. for Summ. J., Ex C at 2.) Nicholas S. Scaffidi further admits that he has no valid cause of action under the Magnuson–Moss Warranty Act, the Truth in Lending Act, the Fair Credit Reporting Act, the Installment Sales Act, Nevada Revised Statute 482.26295, and the Nevada Deceptive Trade Practices Act. (*Id.* at 2–3.) Additionally, Nicholas S. Scaffidi admits that he has no valid cause of action for deceit, breach of implied warranty of merchantibility, breach of implied warranty of fitness for a particular use, fraud or misrepresentation, conversion, breach of obligation of good faith, or under any products liability theories. (*Id.*) Nicholas S. Scaffidi further admits that Progressive issued a check to him, Grenville Pridham, and NMAC jointly, which Pridham deposited in his trust account without Nicholas S. Scaffidi's endorsement, and then disbursed the funds to Nicholas S. Scaffidi. (*Id.* at 4.) Finally, Nicholas S. Scaffidi admits that he is not entitled to rescind the subject contract. (*Id.* at 2.)

Plaintiff Nicholas C. Scaffidi admits that he provided Nissan with his social security number in conjunction with the purchase of the Camaro. (Nissan Motor Acceptance Corp.'s Mot. for Summ. J., or, in the Alternative, Mot. for Partial Summ. J., Ex D at 2.) Nicholas C. Scaffidi further admits that he provided his son, Nicholas S. Scaffidi, with his social security number in conjunction with the sale of the Camaro, and that Nicholas S. Scaffidi used Nicholas C. Scaffidi's social security number in applying for credit to purchase the Camaro. (*Id.*) Nicholas C. Scaffidi further admits that he has no valid cause of action under the Fair Credit Reporting Act, the Nevada Deceptive Trade Practices Act, the Installment Sales Act, and Nevada Revised Statute 482.36395. (*Id.* at 2–3.) Nicholas C. Scaffidi further admits that he did not formally dispute NMAC's credit reporting with any credit reporting agency. (*Id.* at 3.)

Nissan now moves this Court to grant summary judgment as to all of Nicholas S. Scaffidi's claims. Additionally, Nissan argues that Nicholas S. Scaffidi is in breach of his duty to preserve evidence, by allowing the Camaro to be destroyed. Therefore, should this Court deny Nissan's motion for summary judgment, Nissan moves this Court to make a finding of spoilation and sanction Nicholas S. Scaffidi by dismissing all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing

the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001).

## III. DISCUSSION

### A. Nicholas S. Scaffidi's claims against Nissan

#### 1. Magnuson–Moss Warranty Act (claim 1)

The Magnuson–Moss Warranty Act ("Warranty Act") provides in pertinent part:

In order for a warrantor warranting a consumer product by means of a written warranty to meet the Federal minimum standards for warranty—

(1) such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;

(2) notwithstanding section 2308(b) of this title, such warrantor may not impose any limitation on the duration of any implied warranty on the product;

(3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and

(4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be) . . . .

15 U.S.C. § 2304. The Warranty Act defines a "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." 15 U.S.C. § 2301(1). The Warranty Act defines a "consumer" as follows:

The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. § 2301(3). The Warranty Act defines a "supplier" as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4). A "warrantor" is defined as any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty. 15 U.S.C. § 2301(5). The term "written warranty" is defined as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

Nicholas S. Scaffidi alleges that Nissan refused to repair the damaged Camaro in accordance with the alleged limited warranty of the car, and therefore is in breach of the Warranty Act. Nissan argues that Nicholas S. Scaffidi's Warranty Act claim fails for several reasons. NMAC argues that the Camaro was sold "as is" and therefore there is no warranty exists on the vehicle. Additionally, Nissan argues that Nicholas S. Scaffidi is not a consumer as defined by the Warranty Act because he did not purchase the Camaro during a time when a warranty was in place, and therefore the Warranty Act protections do not extend to him.

Nicholas S. Scaffidi opposes summary judgment arguing that questions of material fact remain warranting further litigation. Specifically, Nicholas S. Scaffidi argues that NMAC has produced only one sales contract, when, in fact, there are two at issue, and the presence of both supports Nicholas S. Scaffidi's claim under the Warranty Act. Additionally, Nicholas S. Scaffidi argues that the window placard is a material part of the contract, and therefore the Camaro was sold under a limited warranty rather than "as is."

Nicholas S. Scaffidi has admitted he has no cause of action under the Warranty Act, thus Nissan is entitled to summary judgment on this claim. (Nissan Motor Accep-

tance Corp.'s Mot. for Summ. J., or, in the Alternative, Mot. for Partial Summ. J., Ex C at 2.) Furthermore, the only evidence Nicholas S. Scaffidi relies on, the window placard, is inadmissible because it is unauthenticated.

■ "Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.2002) (citing Fed.R.Evid. 901(a) (quotation and footnote omitted).) The decision to exclude evidence lies within the district court's discretion. *Id.* The proponent of evidence must make a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity. *U.S. v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir.1991). Pursuant to Federal Rule of Civil Procedure 56(e), documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Orr*, 285 F.3d at 774 (quotation omitted). A party also may authenticate an exhibit by any means listed in Federal Rules of Evidence 901(b) and 902. *See* Fed.R.Evid. 901(b) (providing ten approaches to authentication such as voice identification, public records, data compilations, nonexpert opinions on handwriting, and distinctive characteristics); Fed.R.Evid. 902 (self-authenticating evidence such as public documents under seal, certified copies of public records, newspapers, and acknowledged documents). Additionally, a party may authenticate an exhibit through other means that establish a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity, such as judicial notice. *See* Fed.R.Evid. 201. Plain-

tiffs have not authenticated the window placard. Plaintiffs do not provide any evidence establishing the offered placard was in the Camaro at the time of the sale. The placard is therefore inadmissible because it is unauthenticated. *See Orr,* 285 F.3d at 773.

■ Under the Warranty Act, a written warranty is defined as "any written affirmation of fact or written promise made in connection with the sale of a consumer product ..." or "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product ...." 15 U.S.C. § 2301(6). Viewing all evidence in favor of the non-moving party, Nicholas S. Scaffidi, there is no genuine issue of material fact that Nissan gave a written warranty in connection with the sale of the Camaro. The signed contract between Nicholas S. Scaffidi and Nissan indicates, in bold and enlarged print, that the Camaro was sold "as is." (Def.'s Mot. Summ. J., Ex. B.) Specifically, both copies of the After Sale Work Agreement included the statement "SOLD AS IS OR AS EQUIPPED—NOTHING ELSE PROMISED OR IMPLIED ...," and were both signed and initialed by Nicholas S. Scaffidi. *(Id.)* Additionally, the After Sale Work Agreement states that any other promises made, including verbal promises, must be in writing or will not be honored. *(Id.)* Because no genuine issues of fact remain regarding whether a warranty existed on the Camaro at the time of sale, the Court will grant Nissan's motion to dismiss Plaintiff's claim under the Magnuson Moss Warranty Act (claim 1).

### 2. Truth in Lending Act (claim 2)

The Truth in Lending Act ("TILA") provides that a creditor must disclose any finance charges accompanying the transaction at the time of the transaction. 15 U.S.C. § 1638(a)(3). TILA further provides "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Nicholas S. Scaffidi admits he has no claim under the TILA, however summary judgment is appropriate in any event because his claim is barred by TILA's statute of limitations. (NMAC's Mot. for Summ. J., Ex C at 2.) Nicholas S. Scaffidi bought the car on October 1, 2002, and filed his Complaint two years later on October 1, 2004. Therefore, Plaintiff brought his claim a year after TILA's statute of limitation already had expired. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim under the Truth in Lending Act (claim 2).

### 3. Fair Credit Reporting Act (claim 3)

The Fair Credit and Reporting Act ("FRCA"), 15 U.S.C. § 1681, provides:

(b) Adverse action based on information obtained from third parties other than consumer reporting agencies

(1) In general.—Whenever credit for personal, family, or household purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness [FN1], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the rea-

sons for such adverse action received within sixty days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer.

(2) Duties of person taking certain actions based on information provided by affiliate.—

(A) Duties, generally.—If a person takes an action described in subparagraph (B) with respect to a consumer, based in whole or in part on information described in subparagraph (C), the person shall—

(i) notify the consumer of the action, including a statement that the consumer may obtain the information in accordance with clause (ii); and

(ii) upon a written request from the consumer received within 60 days after transmittal of the notice required by clause (i), disclose to the consumer the nature of the information upon which the action is based by not later than 30 days after receipt of the request.

15 U.S.C. § 1681(b). Nicholas S. Scaffidi asserts Defendants obtained and used his consumer report in violation of FRCA, § 1681b. Additionally, Nicholas S. Scaffidi asserts that Defendants violated the FRCA by willfully and knowingly failing to provide him notice of the use of his consumer report in violation of FRCA § 1681m(a). Nissan moves the Court to grant summary judgment arguing that Nissan has never obtained Nicholas S. Scaffidi's credit report, has never denied or accepted credit for Nicholas S. Scaffidi, and has never reported anything against

Nicholas S. Scaffidi's credit report, thus he has no cause of action under § 1681b(f). Additionally, NMAC argues that because § 1681m(a) is reserved for incidents where adverse action is taken against the consumer, Nicholas S. Scaffidi's claims under § 1681m(a) fail as a matter of law. Plaintiff does not respond to these arguments.

■ Nicholas S. Scaffidi admits that he does not have a valid cause of action under the FRCA, however, summary judgment would be appropriate regardless because Scaffidi provides no evidence that Nissan obtained, used, or took an adverse action against his credit report, and therefore there is no issue of material fact exists as to whether Nissan was in violation of the FRCA. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim under the FRCA (claim 3).

### 4. Rescission for Material Misrepresentation of the Facts (claim 4)

■■ "Rescission is an equitable remedy which totally abrogates a contract and which seeks to place the parties in the position they occupied prior to executing the contract." *Bergstrom v. Estate of De-Voe,* 109 Nev. 575, 854 P.2d 860, 861 (1993). Where a contract between two parties has been partially performed, and one party does not fully perform, the other has a choice of remedies. *Id.*

"He may and he must rescind or affirm the contract, but he cannot do both. If he would rescind it, he must immediately return whatever of value he has received under it, and then he may defend against an action for specific performance ... and he may recover back whatever he has paid .... He cannot at the same time affirm the contract by retaining its benefits and rescind it by repudiating its burdens."

*Id.* (quoting *German Sav. Inst. v. De La Vergne Refrig. Mach. Co.*, 70 F. 146 (8th Cir.1895)). "A priori, where there has been a valid rescission of the contract, there is no longer any contract to enforce and, therefore, no longer a cause of action for breach." *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 257, 262 n. 6 (1997).

■ Nissan moves this Court to grant summary judgment with regard to Nicholas S. Scaffidi's claim for rightful rescission. Nissan argues that this claims fails for a number of reasons. Nissan argues that because the Camaro has been completely totaled, the contract cannot be rescinded, as Nissan cannot be put back into the same position they were in prior to executing the contract. Additionally, NMAC argues that rescission is an improper remedy because Nicholas S. Scaffidi has unclean hands and therefore is not entitled to the equitable remedy. Nicholas S. Scaffidi does not respond directly to NMAC's argument, however, he argues that the alleged window placard to the Camaro raises sufficient genuine issues of material fact to support his claim for rescission.

There is no genuine issue of material fact that Nicholas S. Scaffidi is entitled to rescission on the contract regarding the Camaro. First, Nicholas S. Scaffidi concedes he is not entitled to rescission on the subject contract and that he did not legally revoke acceptance of the subject vehicle. (NMAC's Mot. for Summ. J., Ex C at 2.) However, even if Nicholas S. Scaffidi's did not concede his claim, summary judgment still would be warranted. First, Plaintiffs have provided no evidence, nor does the record contain evidence, that the Camaro actually had been in a prior accident or that the Camaro was in such a shape as to be considered an example of Defendants' failure to perform. Rather, Williams

states in a letter written to Nicholas S. Scaffidi that a review of the Camaro's records revealed a clean history with no prior accident or ownership. (Def. NMAC's Qualified Non–Opp'n to Attorney Grenville Pridham's Mot. to Withdraw as Attorney in Charge for Nicholas S. Scaffidi, Ex. A.) Second, as a matter of law Nicholas S. Scaffidi cannot rescind the contract because the Camaro has been completely destroyed and therefore both parties could not be returned to the position they occupied prior to executing the contract. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim for rescission (claim 4).

### 5. Nevada Deceptive Trade Practices Act (claim 5)

In relevant part, Nevada Revised Statute 598.0915 provides:

A person engages in a 'deceptive trade practice' if, in the course of his business or occupation, he:

2. Knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease.

. . . . .

3. Knowingly makes a false representation as to affiliation, connection, association with or certification by another person.

. . . . .

14. Fraudulently alters any contract, written estimate of repair, written statement of charges or other document in connection with the sale or lease of goods or services.

Nev.Rev.Stat. 598.0915. Nissan moves this Court to grant summary judgment as to Nicholas S. Scaffidi's claims under the Nevada Deceptive Trade Practices Act ("NDTPA"). Nicholas S. Scaffidi does not

respond directly to Defendant's arguments. However, Nicholas S. Scaffidi argues the existence of two vehicle contracts raises sufficient issues of material fact as to whether Defendants are in violation of Nevada Revised Statute 598.0915. Additionally, Nicholas S. Scaffidi argues that the FTC holder-rule establishes NMAC's liability for claims against Nissan.

 Plaintiff concedes that he has no valid cause of action under the NDTPA, Nevada Revised Statute 598. (NMAC's Mot. for Summ. J., Ex C at 2.) However, even if Nicholas S. Scaffidi did not concede his claim, summary judgment still would be warranted.

The basis of Nicholas S. Scaffidi's claim against Nissan under the NDTPA is that Nissan did not disclose to Plaintiff, at the time of sale, that the Camaro had been a rental car and had been in a significant accident. Plaintiffs provide no evidence, and the record does not reveal any evidence the Camaro was in an accident, or was not in the shape promised by Nissan. Viewing all facts in favor of Plaintiff, the non-moving party, there is no issue of material fact that NMAC made any statements contrary to the truth or in violation of the NDTPA. Furthermore, the existence of the two contracts does not raise a significant issue with regard to this claim. Even if there are two contracts, the evidence is insufficient to prove that Nissan knowingly made a false representation as to the Camaro's source, knowingly made a false representation as to affiliation with a particular person, or fraudulently altered the contract in connection with the sale of the Camaro. Because Plaintiffs have presented no evidence to support their allegation that the Camaro was previously damaged. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim under the NDTPA (claim 5).

### 6. Deceit (claim 6)

 In Nevada, the tort of deceit is treated as the tort of false representation. *Pac. Maxon, Inc. v. Wilson*, 96 Nev. 867, 619 P.2d 816, 817 (1980) (citing *Lubbe v. Barba*, 91 Nev. 596, 540 P.2d 115 (1975); *Clark Sanitation v. Sun Valley Disposal*, 87 Nev. 338, 487 P.2d 337 (1991)).

A false representation made by the defendant, knowledge or belief on the part of the defendant that the representation is false—or, that he has not a sufficient basis of information to make it, an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it, and damage to the plaintiff, resulting from such reliance, are the elements of intentional misrepresentation. *Lubbe*, 540 P.2d at 117 (citing Prosser, Law of Torts 685 (4th ed.1971)).

 Nicholas S. Scaffidi concedes that he has no valid cause of action for deceit. (NMAC's Mot. for Summ. J., Ex C at 2.) However, even absent Plaintiff's confession, viewing all evidence in favor of Nicholas S. Scaffidi, no issues of material fact exist as to whether Nissan intentionally deceived Plaintiffs in the sale of the Camaro. There is no evidence Defendants made a false representation to Plaintiffs with the intention to induce the Plaintiffs to buy a defective car, or that the car was defective. With discovery closed and the Camaro is destroyed, no evidence of a material misrepresentation exists. For these reasons, this Court will grant Nissan's motion for summary judgment with regard to Nicholas C. Scaffidi's claim for deceit (claim 6).

### 7. Breach of the Implied Warranty of Merchantability (claim 7)

 In Nevada, "[u]nless excluded, or modified, a warranty of merchantability is

implied in a contract if the seller is a merchant with respect to the goods in question." *Mohasco Indus., Inc. v. Anderson Halverson Corp.*, 90 Nev. 114, 520 P.2d 234, 235–36 (1974) (citing Nev. Rev.Stat. 104.2314.) Nevada Revised Statute 104.2314(1) provides:

> Unless excluded or modified (NRS 104.2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

A "disclaimer contained in the contract of sale exclude[s] warranties, if any, outside the contract." *Sierra Creek Ranch, Inc. v. J.I. Case,* 97 Nev. 457, 634 P.2d 458, 460 (1981). Nevada Revised Statute 104.2316 provides in pertinent part:

> 2. Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> 3. Notwithstanding subsection 2:
>
> (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
>
> (b) When the buyer before entering into the contract has examined the

goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

> (c) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

 As a matter of law, Nicholas S. Scaffidi has no valid claim for breach of the implied warranty of merchantability. First, Nicholas S. Scaffidi concedes he has no valid claim for breach of the implied warranty of merchantability. (NMAC's Mot. for Summ. J., Ex C at 3.) Second, as explained previously, the Camaro was sold "as is" and without warranty. Under Nevada Revised Statute 104.2316(3)(a), the term "as is" "calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." Nev.Rev.Stat. 104.2316(3)(a). For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Plaintiff's claim for breach of the implied warranty of merchantability (claim 7).

## 8. Breach of the Implied Warranty of Fitness for a Particular Purpose (claim 8)

Nevada Revised Statute 104.2315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Nev.Rev.Stat. 104.2315. Under Nevada Revised Statute 104.2316(3)(a), the term

"as is" "calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." Nev. Rev.Stat. 104.2316(3)(a).

Nissan moves the Court to grant summary judgment as to Nicholas S. Scaffidi's claim for breach of the implied warranty of fitness for a particular purpose. Nissan argues that because the Camaro was sold "as is" there is no implied warranty as a matter of law, and therefore no breach. Plaintiff does not respond directly to Nissan's arguments, however, Plaintiff argues that the window placard raises a genuine issue of material fact as to the warranty.

Nicholas S. Scaffidi concedes that he has no valid cause of action for the breach of the implied warranty of fitness for a particular purpose. (NMAC's Mot. for Summ. J., Ex C at 3.) Additionally, as explained previously, the window placard upon which Nicholas S. Scaffidi bases his argument, is not authenticated and thus inadmissible. The Camaro was sold "as is" and therefore, under Nevada Revised Statutes 104.2315 and 104.2316 there is no implied warranty of fitness for a particular purpose and therefore no breach. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim for breach of the implied warranty of fitness for a particular purpose (claim 8).

### 9. Revocation of Acceptance (claim 9)

Nicholas S. Scaffidi claims that Defendants are in violation of Nevada Revised Statute 104.2608 for failing properly to accept Nicholas S. Scaffidi's revocation of the sales contract for the Camaro. He asserts that he effectively revoked the contract on November 1, 2002, and that Defendants have refused to honor the revocation of the contract in violation of Nevada Revised Statute 104.2608. As a result, Nicholas S. Scaffidi argues this Court should require Defendants to accept return of the Camaro and refund Nicholas S. Scaffidi's purchase price, in addition to other enumerated consequential damages.

Nevada Revised Statute 104.2608 provides:

1. The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

2. Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

3. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Nev.Rev.Stat. 104.2608. For the purpose of Nevada Revised Statute 104.2608, the term "lot" is defined as "a parcel or a single article which is the subject matter of a separate sale or delivery, whether or not it is sufficient to perform the contract." Nev.Rev.Stat. 104.2105. Similarly,

"[c]ommercial unit" means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a

suite of furniture or an assortment of sizes) or a quantity (as a bale, gross or carload) or any other unit treated in use or in the relevant market as a single whole.

Nev.Rev.Stat. 104.2105.

Nissan moves the Court to grant summary judgment with regard to Nicholas S. Scaffidi's claim for the right to revocation. Nissan argues that the Camaro is not a "lot" or a "commercial good" as defined by Nevada Revised Statute 104.2105, and therefore Nicholas S. Scaffidi's claim fails as a matter of law. Additionally, Nissan argues that the Camaro has been destroyed and sent to scrap, and therefore, revocation is impossible as a matter of law. Plaintiff does not directly respond to Nissan's arguments, however, Plaintiff does argue, generally, that the presence of two warranty agreements raises substantial issues of material fact.

Nicholas S. Scaffidi concedes that he did not legally revoke acceptance of the Camaro. (NMAC's Mot. for Summ. J., Ex C at 3.) However, even if he had not conceded his claim, Nicholas S. Scaffidi's claim for revocation of acceptance would fail as a matter of law. There is no question of material fact that the Camaro is destroyed and has been sold for scrap. The Camaro substantially has changed and therefore cannot be returned to Defendants as provided for under Nevada Revised Statute 104.2608. Additionally, there is no question of material fact that the Camaro was conforming. Because Plaintiffs presented no evidence beyond their unsupported allegations that the Camaro previously was damaged. Rather, an examination of the Camaro by a third party revealed that there was no indication of prior structural damage to the Camaro. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to

Nicholas S. Scaffidi's claim for revocation of acceptance (claim 9).

### 10. Holder Liability of Assignee (claim 10)

Nicholas S. Scaffidi alleges Defendants are in violation of the Installment Sales Act, 16 C.F.R. § 433. Nicholas S. Scaffidi further alleges that Defendants are subject to all of his claims and defenses under Nevada Revised Statute 97.275. Nicholas S. Scaffidi further claims that because of Defendants' violations under the Installment Sales Act and Nevada Revised Statute 97.275, he is entitled to the amount he paid in the transaction, incidental damages, including the financing cost and cost of parts, consequential damages, and attorney's fees. (*Id.*) Additionally, Nicholas S. Scaffidi argues the Court should cancel the remainder of the contract, and permanently enjoin the Defendants from reporting any neutral or negative credit information concerning Nicholas S. Scaffidi arising out of the transaction. (*Id.* at 26.)

Nissan moves the Court to grant summary judgment as to Nicholas S. Scaffidi's claim under the Installment Sales Act and Nevada Revised Statute 92.275. Nissan argues that Defendants complied with the Installment Sales Act's requirements and therefore Nicholas S. Scaffidi has no cause of action as a matter of law. Nicholas S. Scaffidi does not respond to Nissan's argument regarding compliance with the Installment Sales Act. However, he does argue that under the FTC holder rule, a consumer's claims against a seller are preserved against a creditor.

The Code of Federal Regulations regarding the Installment Sales Act, 16 C.F.R. § 433.2, provides:

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commis-

sion Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

or,

(b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2. Plaintiff concedes he has no valid claim under the Installment Sales Act. (NMAC's Mot. for Summ. J., Ex C at 3.) However, even if Plaintiff did not concede his claim, there is no question of material fact that NMAC is not in violation of the Installment Sales Act. The sales contract for the Camaro includes the following language:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(Mot. for Partial Summ. J. As to Nissan Motor Acceptance Corp.'s First Amended Counterclaim and Third–Party Compl., Ex. A. at Ex. 1.) Nissan is in compliance with the requirements of the Installment Sales Act, 16 C.F.R. § 433.2.

Nevada Revised Statute 97.275 provides:

1. No provision of a retail installment contract or retail charge agreement shall be valid by which the buyer agrees not to assert against the seller or against an assignee a claim or defense arising out of the sale.

2. No act or agreement of the retail buyer before or at the time of the making of a retail installment contract, retail charge agreement or purchases thereunder shall constitute a valid waiver of any of the provisions of this chapter or of any remedies granted to the buyer by law.

Nev.Rev.Stat. 97.275. As a matter of law, Nevada Revised Statute 97.275 does not subject Nissan to affirmative liability to Nicholas S. Scaffidi, it only preserves his rights to assert other claims against a

seller or assignee, therefore Nicholas S. Scaffidi has no claim under Nevada Revised Statute 97.275. For these reasons, this Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim for holder liability of the assignee (claim 10).

### 11. Actual and Constructive Fraud for Misrepresentation and Charging and Collecting Extra Money (Packing) (claim 11)

Nicholas S. Scaffidi alleges Defendants are liable for actual and constructive fraud for misrepresentations and charging and collecting extra money, or "packing." Nicholas S. Scaffidi alleges Nissan renegotiated his contract and in doing so included unauthorized elements, including extra fees and insurance premiums. Nissan moves this Court to grant summary judgment with regard to this claim, arguing TILA pre-empts the state law claim because it is based upon allegations that Defendants should have made disclosures as to some of the fees charged to Nicholas S. Scaffidi.

 Nicholas S. Scaffidi concedes that he does not have a valid claim for fraud or misrepresentation. (NMAC's Mot. for Summ. J., Ex C at 3.) However, even if he did not concede his claim, there is no issue of material fact regarding whether Nissan is liable for fraud or misrepresentation.

In Nevada, fraudulent misrepresentation occurs when a false representation is made with knowledge or belief that it is false, or with an insufficient basis of information for making the representation, and with intent to induce the plaintiff to act, and the plaintiff relies on the misrepresentation with resulting damages. Intent must be specifically alleged.

*Jordan v. State ex rel. Dept. of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 51 (Nev.2005) (citing *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1386 (1998); *Tahoe Village Homeowners v. Douglas Co.*, 106 Nev. 660, 799 P.2d 556, 558 (1990)).

Viewing all evidence in favor of Nicholas S. Scaffidi, there is no evidence that Defendants made a false representation to Nicholas S. Scaffidi during negotiation for the Camaro, nor is there evidence that Defendants made such claims with the intent to induce him to act, while knowing that such information was false. Plaintiff provides no evidence that Defendants made the renegotiated contract to deceive or to fraudulently misrepresent the fees that they charged. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim for actual and constructive fraud (claim 11).[1]

### 12. Nevada Revised Statute 482.36395: Encouraging Dealer to Sell or Lease Motor Vehicles through Deceptive Practices (claim 13)

Nevada Revised Statute 482.36395 provides in relevant part:

No manufacturer, distributor, factory branch or representative thereof may:

1. Encourage, aid or abet a dealer to sell or lease vehicles through any false, deceptive or misleading sales or financing practice.

---

1. Nissan's argument that Nicholas S. Scaffidi's claim is preempted by federal law is misplaced. Nissan bases this argument on the assumption that Nicholas S. Scaffidi's claim is based on a failure to disclose some fees charged to him, which would therefore be a violation of the TILA. However, as plead, Nicholas S. Scaffidi's claim argues not that Defendants did not disclose the fees, but that Defendants manipulated the fees upon renegotiation of the contract.

Nevada Revised Statute 482.36395 defines a "distributor" as "a person, other than a manufacturer, who is engaged in the business of selling new vehicles to dealers." Nev.Rev.Stat. 482.36318. A "distributor branch" is defined as "a branch office maintained by a distributor for the sale of new vehicles to dealers or which is maintained for directing and supervising distributor branch representatives." Nev. Rev.Stat. 482.36319. A "factory branch" is defined as a branch office maintained by a manufacturer for the sale of new vehicles to distributors or dealers or which is maintained for directing and supervising manufacturers' representatives. Nev.Rev.Stat. 482.3632.

Nicholas S. Scaffidi alleges that Defendants violated Nevada Revised Statute 482.36395 by falsely misrepresenting certain aspects of the purchase agreement of the Camaro. Nissan moves the Court for summary judgment arguing that as a matter of law. Nissan argues it is not liable under the statute as it is not a manufacturer, distributor, factory branch or representative thereof.

 Plaintiff concedes that he has no valid cause of action under Nevada Revised Statute 482.36395. (NMAC's Mot. for Summ. J., Ex C at 3.) However, even if Nicholas S. Scaffidi did not concede his claim, his claim fails. As a matter of law, Nissan is not a manufacturer, distributor, factory branch or representative thereof under Nevada Revised Statute 482.36395. The articulated purpose of the code is to protect dealers of cars from undue pressure by either manufacturers or distributors to commit fraudulent acts, not to provide an independent cause of action for motor vehicle consumers. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim under Nevada Revised Statute 482.36395.

### 13. Breach of the Obligation of Good Faith (claim 14)

 Nevada Revised Statute 104.1203 provides that "[e]very contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement." Nev.Rev.Stat. 104.1203. "Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract." *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382 (1993) (citing *A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 784 P.2d 9, 10 (1989)).

Nicholas S. Scaffidi alleges Nissan breached its obligation of good faith and fair dealing by breaching the express and implied warranties, misrepresenting the mechanical condition of the car, misrepresenting that the car was in perfect condition, misrepresenting that they had repaired any damage to the car, refusing to refund the purchase price of the car, and packing the sales contract with undisclosed fees. Nissan moves the Court for summary judgment arguing that there is no implied warranty where a good is sold "as is," such as in the sale of the Camaro, therefore Nicholas S. Scaffidi's claim fails as a matter of law.

Nicholas S. Scaffidi concedes that he does not have a valid cause of action for breach of the obligation of good faith and fair dealing. (NMAC's Mot. for Summ. J., Ex C at 3.) However, even if he did not concede his claim, summary judgment would be warranted. Viewing all evidence in favor of Plaintiff, the non-moving party, there is no genuine issue of material fact supporting Plaintiff's claim for breach of the obligation of good faith and fair dealing. First, as explained previously, the Camaro was sold "as is" and thus there were no express or implied warranties on the car. Second, although Plaintiff alleges

that the Camaro was not in proper condition at the time of sale, Plaintiff has failed to provide evidence that the Camaro was not in working mechanical condition. Rather, Nissan examined the car and found it to be in good shape with a clean history. (Def. NMAC's Qualified Non–Opp'n to Attorney Grenville Pridham's Mot. to Withdraw as Attorney in Charge for Nicholas S. Scaffidi, Ex. A.) Third, as discussed previously, Nicholas S. Scaffidi was not entitled to recision, and therefore Defendants' refusal to rescind the contract was not a breach of the obligation of good faith. Finally, there is no evidence that NMAC fraudulently misrepresented additional fees to Nicholas S. Scaffidi, as discussed previously. As there are no genuine issues of material fact upon which Nicholas S. Scaffidi can claim a breach of the obligation of good faith, and given that he conceded he does not a have a claim, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim for breach of the obligation of good faith (claim 14).

### 14. Product Liability (claim 15)

 Nevada law imposes strict liability even where the product is faultlessly made, if it was unreasonably dangerous to place the product in the hands of consumers without adequate warnings concerning the product's safe and proper use. *Oak Grove Investors v. Bell & Gossett Co.*, 99 Nev. 616, 668 P.2d 1075, 1080 (1983) (overruled on other grounds). "To bring successfully a strict products liability claim, a plaintiff must show that: 1) the product had a defect which rendered it unreasonably dangerous; 2) the defect existed at the time the product left the manufacturer; and 3) the defect caused the plaintiff's injury." *Fyssakis v. Knight Equip. Corp.*, 108 Nev. 212, 826 P.2d 570, 571 (1992) (citing *Ginnis v. Mapes Hotel Corp.*, 86 Nev. 408, 470 P.2d 135 (1970)). "Strict

liability may extend not only to the dealer and retail seller of the product, but to the manufacturer of the product and the manufacturers of its component parts." *Oak Grove Investors*, 668 P.2d at 1080.

Nicholas S. Scaffidi alleges that the Camaro was unmerchantable because the Camaro had a bent frame from a prior accident, it was allegedly in need of repeated repairs soon after purchase, and because it was missing its air bags. Nicholas S. Scaffidi therefore argues that Defendants are strictly liable for products liability. Nissan now moves the Court to grant summary judgment because there is no evidence which demonstrates the Camaro was previously damaged. Additionally, Nissan argues that because the Camaro had been destroyed prior to Nissan's expert examination, no evidence exists demonstrating that the Camaro was damaged, therefore summary judgment is appropriate.

Nicholas S. Scaffidi concedes that he has no valid cause of action under any products liability theories. (NMAC's Mot. for Summ. J., Ex C at 3.) However, even if Nicholas S. Scaffold did not concede his claim, summary judgment still would be appropriate. Viewing all evidence in favor of Nicholas S. Scaffidi, the non-moving party, there is no question of material fact that the Camaro had a defect which rendered it unreasonably dangerous. As discovery has closed and the Camaro has been destroyed, there is no question of material fact that the Camaro was defective at the time of sale. For these reasons, the Court will grant Nissan's motion for summary judgment with regard to Nicholas S. Scaffidi's claim for product liability (claim 15).

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant/Third Party Plaintiff United

Nissan's Motion for Summary Judgment of All Counts Alleged in Nicholas S. Scaffidi's Complaint or Alternatively a Motion to Exclude Spoiled Evidence (Doc. # 78) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant/ Third–Party Plaintiff United Nissan's Strike Certain Allegations made by Grenville Pridham in Plaintiff Nicholas C. Scaffidi's Opposition (Doc. ## 103, 104, 105, 106) is hereby DENIED as moot.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days from the date of this Order to filed a Proposed Joint Pretrial Order in compliance with local rules 16–(3) and 16–(4).